THE UNITED STATES, PLAINTIFFS IN ERROR v. ELEAZAR W.
RIPLEY.

The United States brought an action against general Ripley for a certain
amount of public money he had, as was alleged, failed to account for
and pay over as the law required. The defendant was in the service of
the United States from 1812 to 1817; and was promoted at different pe-
riods, until he resigned his commission as major-general by brevet in the
latter year. During this period he rendered distinguished and active
military services to his country, and received the pay and emoluments to
which his rank entitled him, under the law and regulations applicable
thereto. Large sums of moneys passed through his hands, and were
disbursed by him for the supplies of the troops under his command. He
claimed a commission on these sums, and offered evidence to prove that
similar allowances had been made to others. He also claimed extra pay
or compensation for services performed by him, not within the line of his
duty, in preparing plans of fortifications, and for procuring and forward-
ing supplies of provisions, &c. to troops of the United States, beyond
his military command. These claims were resisted by the United States
on the ground that no other compensation could be allowed to him than
such as was mentioned or defined by the laws of the United States, by
instructions of the president, or by the legal regulations of the war de-
partment.

It is presumed that every person who has been engaged in the public ser-
vice has received the compensation allowed by law, until the contrary
appear. The amount of compensation in the military service may depend,
in some degree, on the regulations of the war department; but such re-
gulations must be uniform, and applicable to all officers under the same
circumstances.

If the disbursements, for which compensation is claimed, were not such as
were ordinarily attached to the duties of the officer, the fact should be
stated; and also that the service was performed under the sanction of the
government, or under such circumstances as rendered the extra labour
and responsibility assumed in performing it necessary.

Should the accounting officer of the treasury refuse to allow an officer the
established compensation which belongs to his station, the claim, having
been rejected by the proper department, should, unquestionably, be al-
lowed by way of set-off to the demand of the government by a court and
jury.

And it is equally clear, that an equitable allowance should be made in the
same manner for extra services performed by an officer which did not
come within the line of his official duty, and which had been performed
under the sanction of the government, or under circumstances of pecu-

[United States v. Ripley.]

liar emergency. In such a case the compensation should be graduated by the amount paid for like services under similar circumstances. Usage may be safely relied upon in such cases, as fixing a just compensation.

However valuable the plans for fortifications, prepared by a public officer, may have been, unless they were prepared at the request of the government, or were indispensable to the public service, as a matter of right, a compensation for them cannot be claimed.

The claims of compensation set up in this case, must be brought within the established rules on the subject, before they can receive judicial sanction.

ERROR from the district court of the eastern district of Louisiana.

In the district court of the United States for the eastern district of Louisiana, the United States, on the 7th of September 1822, instituted proceedings by two petitions, claiming in one, "the sum of thirteen thousand one hundred and sixty-three dollars, and ten cents, as due by Eleazar W. Ripley, late major-general in the army of the United States, which, on the 9th day of April 1821, at the treasury department, was found against him, on a statement and settlement of his account;" and claiming in the other, "the sum of four thousand one hundred and fifty-four dollars and ninety-five cents, which, on the 5th day of May 1821, at the treasury department, was found against him on the settlement and statement of his account." ·

To that petition the defendant pleaded that he was not indebted to the United States; and the case was afterwards, on the 28th of May 1830, submitted to a jury, and a verdict was found for the defendant in the following terms. "Verdict for the defendant as follows:

"Amount of his account, less $500 lost, - $13,060 22
"Extra services at Washington, - - 2,000 00

$15,060 22

"Deducting therefrom balance due the United
States, - - - - - - - 11,929 32

$3,130 90
"A. CHARBONNET.

"New Orleans, 29th of May 1830."

Upon the verdict, the court ordered that the United States

ta'.े nothing by their petitions: and the United States prosecuted this writ of error.

On the trial of the cause, the district attorney of the United States took the following bills of exceptions.

"Be it remembered, that on this 28th day of May 1830, on the trial of this cause, the defendant offered the following testimony: The defendant entered in the army of the United States in the year 1812, as a lieutenant-colonel; was promoted at different periods until he attained the rank of major-general by brevet, which rank he held until the day of his resignation of his commission, in the year 1817. During this interval the defendant was engaged in active service, and received the pay and emoluments to which his rank entitled him, under the laws of the United States, and the regulations of the president of the United States, and of the department of war. Large sums of money passed through his hands, and were passed over by him to various officers in the army under his command, and to others who have been appointed by him to act as such, or were disbursed by him for the supplies of the troops by him commanded. He claimed to be allowed a commission on these disbursements, and offered evidence to prove that similar allowances had been made to other officers of the line of the army, who had been charged with the disbursements of public moneys; and also offered evidence to prove what would be a fair rate of compensation for such services. The defendant also claimed an allowance of extra pay or compensation for services performed by him, not within the line of his duty, in preparing plans for fortifications, and for procuring and forwarding supplies of provisions, &c., to troops of the United States, beyond the limits of his military command, and offered testimony to prove the value of said services. To the introduction of all which testimony, the attorney for the United States objected, on the ground that no other or further compensation could be allowed for disbursements made, or extra services rendered, as aforesaid, than such as were sanctioned or defined by the laws of the United States, by instructions of the president of the United States, or by regulations of the war department, legally made. But the court overruled the objection and admitted the testimony."

"And be it further remembered, that on the trial of this cause, the testimony in the case having been closed, the attorney of the United States prayed the court to instruct the jury that no allowance in the form of commissions or otherwise, for moneys disbursed, as aforesaid, or extra compensation for services rendered under the circumstances hereinbefore stated, could be admitted as a legal and equitable set-off against the claims of the United States; other than such as were sanctioned and defined by the laws of the United States, by instructions of the president of the United States, or by regulations of the department of war, legally made. But the court refused so to instruct the jury, but stated to them that the defendant was entitled to credit for commissions on disbursements, and allowances for extra services, and that they must judge of the rate and extent of such commissions."

The case was argued, for the plaintiffs in error, by Mr Taney, attorney-general of the United States; no counsel appeared for the defendant in error.

For the United States, it was contended, that from the bill of exceptions and the verdict of the jury, it appeared that some of the services for which extra compensation was claimed were rendered by general Ripley in the line of his duty, and that it did not appear that others were so performed, but the government had the advantages of the services. The receiving and paying money for which commissions are claimed, were of the former description, and are not represented otherwise. Other charges are made on the allegation that they are for services out of, or beyond his duty.

The question to be decided by the court, depends upon the fourth section of the act of congress of 1794, 2 Laws U. S. 594.

By that law no claims can be made which could not be allowed by the accounting officers of the treasury in the settlement of accounts. It was not intended that claims which could not be presented to those officers, claims for services which were not, by the law regulating the duties of those who made the claims, authorized and designated, and for which the officers of the treasury could not admit a right to compensation.

should be submitted to a court and jury. The errors of the accounting officers, in their construction of the laws, could alone be brought before a court and jury. The term "justly," which is found in the fourth section of the act, was not intended to enlarge the powers of the court and jury beyond that given to the accounting officers.

It is admitted that if the credits or debits claimed against the government were of such a nature that they should have been allowed by the accounting officers, a court and jury have a right to judge of their amount or extent, but they must have been previously submitted at the treasury. There is no difference in the application of this rule to debtors and creditors of the United States.

The principle which is implied in these positions is, that the law never meant to invite resistance in courts of justice by those upon whom the government had claims, by referring the credits of which they could not avail themselves with the accounting officers of the treasury, to courts of law : a contrary deduction from the statute would require strong language to sustain it. To illustrate and maintain these views of the law, the third section of the act was referred to, and the case of the United States v. Wilkins, 6 Wheat. 144, was cited.

The only credits which can be claimed by an officer in the service of the United States, are those for services performed under the authority of a law, by a contract made by an officer or agent of the government, authorized to make the contract. Although services may have been rendered, and the government may be bound in equity and good conscience to allow a compensation for them, yet if the auditor of the treasury could not allow for them, courts and juries cannot look into them. This rule does not apply to the sum or amount, unless a specific sum is stated in the contract, and in such a case the amount stated is conclusive. It is not contended that any difference exists between implied contracts with the government, when a law has authorized a contract, and implied contracts with individuals. The authority to make the contract to bind the United States must be shown.

Upon these principles, it was the duty of the defendant in error to have shown the provisions of the law, or the regulations

of the war department authorized by law, under which the claims of set-off and debit were sanctioned. The bill of exceptions asserts that they were not authorized by any law or by any regulations of the department of war.

It is submitted to the court whether, where there is no law to authorize the claims; where the president, as the head of the government, has no authority by law to authorize such claims; and where there are no regulations of the war department to sanction them, a court of the United States could, on the ground of there being an equity in favour of the claims, allow them.

As to the words *equitable set-off* in the third section of the act, it was argued that it could not have been the intention of the legislature to authorize a set-off as a compensation for services for which the United States were not bound to pay. These terms intend that such set-off shall be admitted when the government was *justly* bound to pay the sums charged for the services, but for which the party making the claim could not sue the United States. They import the claims which the party, asserting the set-off, is justly entitled to; and which the accounting officers of the treasury are authorized by law to admit.

Mr Justice M'LEAN delivered the opinion of the Court.

The United States have brought this writ of error, to reverse a judgment of the court of the United States for the eastern district of Louisiana.

An action was brought in that court to recover from the defendant a certain amount of public money, for which he had failed to account, and neglected to pay over as the law requires.

As the facts of the case appear in the following bill of exceptions, it will be unnecessary to advert, specially, to the pleadings in the cause.

" Be it remembered, that on this 28th May 1830, on the trial of this cause, the defendant offered the following testimony: That he entered into the army of the United States in the year 1812 as a lieutenant-colonel; was promoted at different periods until he attained the rank of major-general by brevet, which rank he held until the day of his resignation of his commission

in the year 1817. During this interval he was engaged in active service, and received the pay and emoluments to which his rank entitled him, under the laws of the United States, and the regulations of the president of the United States and of the department of war.

"Large sums of money passed through his hands to various officers in the army under his command, or were disbursed by him for the supplies of the troops by him commanded. He claimed to be allowed a commission on these disbursements, and offered evidence to prove that similar allowances had been made to other officers of the line of the army, who had been charged with the disbursements of public moneys; and also offered evidence to prove what would be a fair rate of compensation for such services.

"The defendant also claimed an allowance of extra pay or compensation for services performed by him, not within the line of his duty, in preparing plans for fortifications, and for procuring and forwarding supplies of provisions, &c. to troops of the United States, beyond the limits of his military command, and offered testimony to prove the value of said services. To the introduction of all which testimony the attorney for the United States objected, on the ground that no other or further compensation could be allowed for disbursements made, or extra services rendered, as aforesaid, than such as were sanctioned or defined by the laws of the United States, by instructions of the president of the United States, or by regulations of the war department, legally made. But the court overruled the objection and admitted the testimony."

And the testimony being closed, the attorney of the United States prayed the court to instruct the jury, that no allowance in the form of commissions or otherwise, for moneys disbursed as aforesaid, or extra compensation for services rendered, under the circumstances before stated, could be admitted as a legal and equitable set-off against the claim of the United States, other than such as were sanctioned and defined by the laws of the United States, by instructions of the president, or by regulations of the department of war, legally made. But the court refused so to instruct the jury, and stated to them that the defend-

ant was entitled to credit for commissions on disbursements and allowances for extra services, and that they must judge of the rate and extent of such commissions and allowances.

The jury rendered a verdict against the United States, and reported a balance due from them to the defendant.

The claim set up by the defendant, and which was allowed by the jury, rested on two grounds.

1. For certain disbursements made by him.

2. For preparing plans for fortifications, and for procuring and forwarding supplies of provisions, &c. for the troops beyond his military command. The latter service is said, in the bill of exceptions, not to have been within the line of his duty; but no such statement is made in regard to the former.

In behalf of the United States it is contended, that the court can only allow credits which the auditor should have allowed; and that unliquidated damages cannot be set off at law.

In the case of the United States v. Macdaniel, which has been decided at the present term, this court has said, that the powers of the court and jury to admit credits against a demand of the government, were not limited to items which should have been allowed by the auditor. That in all cases where an equitable claim against the United States is set up by a defendant, which, under the circumstances, should have been allowed by an exercise of the discretionary powers of the president or the head of a department, it should be submitted to the jury, under the instructions of the court.

Equitable, as well as legal claims against the government, are contemplated by the law as proper items of credit on the trial; and so this court decided in the case of the United States v. Wilkins, reported in 6 Wheat. 135.

It is presumed that every person who has been engaged in the public service, has received the compensation allowed by law, until the contrary shall be made to appear. The amount of compensation in the military service may depend, in some degree, on the regulations of the war department; but such regulations must be uniform, and applicable to all officers under the same circumstances. So far then as it regards the pay of the defendant for services rendered in the line of his duty, it would seem not to be difficult for him to show certain regula-

tions of the war department, or instructions of the president, within the rule stated in the bill of exceptions by the attorney of the United States.

If, however, the disbursements made, for which compensation is claimed, were not such as were ordinarily attached to the duties of the office held by the defendant, the fact should have been so stated; and also that the service was performed under the sanction of the government, or under such circumstances as rendered the extra labour and responsibility assumed by the defendant in performing it necessary. Should the accounting officers of the treasury department refuse to allow an officer the established compensation which belongs to his station; the claim, having been rejected by the proper department, should unquestionably be allowed, by way of set-off, to a demand of the government, by a court and jury.

And it is equally clear, that an equitable allowance should be made, in the same manner, for extra services performed by an officer which did not come within the line of his official duty, and which had been performed under the sanction of the government, or under circumstances of peculiar emergency. In such a case, the compensation should be graduated by the amount paid for like services, under similar circumstances. Usage may safely be relied on in such cases, as fixing a just compensation.

The allowances claimed under the second head, for services which did not come within the range of his official duties, should have been shown by the defendant to have been performed with the sanction of the government, or under circumstances as above stated.

However valuable the plans for fortifications prepared by the defendant may have been, unless they were prepared at the request of the government, or were indispensable to the public service; he cannot claim a compensation for them, as a matter of right.

The distinguished services rendered by the defendant during the late war, are advantageously known to the country; but the claims set up in the case under consideration must be brought within the established rules on the subject, before they can receive judicial sanction. And as, in the opinion of

this court, the district court erred in their instructions to the jury, which were given without qualification, the judgment must be reversed, and the cause remanded for proceedings de novo.

This cause came on to be heard on the transcript of the record from the district court of the United States for the eastern district of Louisiana, and was argued by counsel; on consideration whereof, it is the opinion of this court, that the said district court erred in their instructions to the jury: whereupon it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said district court, with directions to award a venire facias de novo.