# UNITED STATES v. KING.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 628. Submitted January 9, 1893. — Decided March 6, 1893.

A clerk of a Circuit Court is not entitled to a per-diem pay for services in selecting juries in connection with the jury commissioner.

When a statute increases the duties of an officer by the addition of other duties germane to the office, he must perform them without extra compensation; but if he is employed to render services in an independent employment, not incidental to his official duties, he may recover for such services.

When a clerk of a Circuit Court attends the court personally at one place within the district, and appoints a deputy to attend it at another place or in a different division of the same judicial district, he is entitled, under Rev. Stat. § 831, to make a per-diem charge for attendance at each.

A clerk of a Circuit Court is not entitled to charge for docketing and indorsing an order for the removal of a prisoner for trial in another district.

Charges by a clerk for making separate reports of the amount of fees due each juror and witness and filing separate orders for their payment are disallowed: also charges for making separate recognizances for witnesses in a criminal case, it not appearing that the witnesses could not have conveniently recognized together.

The clerk of a Circuit Court is not entitled to a fee for entering upon the final record the proceedings before a committing magistrate, as, although they may be properly filed, and a fee charged for the filing, they form no part of the record.

THIS was a petition by H. H. King, whose Christian name is not given, to recover certain fees as clerk of the Circuit Court of the United States for the Southern District of Georgia. To his petition was annexed a schedule of 23 items, running through four years of service, which had been disallowed by the accounting officers of the Treasury, amounting in the aggregate to $595.65. The case was tried upon an agreed statement of facts, and a judgment rendered against the United States for $586.15 and costs. See *Erwin* v. *United States*, 37 Fed. Rep. 470. The United States appealed.

*Mr. Felix Brannigan* and *Mr. Solicitor General* for appellants.

*Mr. Charles C. Lancaster* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The agreed statement of facts shows that petitioner was appointed clerk on March 17, 1883, and has continued to hold that office until the present time; that his accounts were duly presented and approved by the court; that the accounting officers disallowed some of the items charged; that the claimant made up an account for these disallowances from the date of his appointment, including therein similar items for services rendered, which had not been included in his accounts,

because of adverse rulings upon the legality of the charges. This account was presented and sworn to in open court for the purpose of bringing this suit. The several items, the allowance of which is assigned by the government as error, will be considered in their order.

1. Per-diem charges of $5 for services as clerk in selecting juries in connection with the jury commissioner are objected to upon the ground that no compensation is provided by law for such services.

Prior to 1879, juries to serve in the courts of the United States were, under Revised Statutes, § 800, designated by ballot, lot or otherwise, according to the mode of forming such juries practised in the several States, and the courts were authorized to adopt rules conforming the method of designating and impanelling juries to the laws and usages of the State. By the act of June 30, 1879, however, (21 Stat. 43, c. 52,) a new system was inaugurated, and it was provided in substance that the names of not less than 300 persons should be placed in the jury box by the clerk of the court and a commissioner to be appointed by the judge, who should be of opposite politics to the clerk, and that the clerk and commissioner should each place one name in the box alternately, without reference to party affiliations. The clerk was not by this statute made a jury commissioner, but a new duty was imposed upon him as clerk, and no provision was made for his compensation. That Congress has the right to impose additional duties upon a public officer without additional compensation is not denied, but it is insisted that under the sundry civil appropriation bill of March 3, 1885, (23 Stat. 478, 511, c. 360,) and under subsequent appropriation bills, a provision for "compensation for jury commissioners, five dollars per day, not exceeding three days for any one term of court," should be equitably held to include the clerk, who performs the same duties as a jury commissioner. As the clerk is not a jury commissioner *eo nomine*, it is difficult to see how he could be paid out of an appropriation for jury commissioners, or how these appropriation bills enlarge his rights, and unless he is entitled to extra compensation *as clerk* for these duties, there

would seem to be no appropriation from which he could be paid. While the duties of the clerk are similar to those of the commissioner, there is nothing in the language to indicate that the clerk did not act as clerk in performing such duties, or that he became *ex officio* a jury commissioner.

The question of compensation for extra services has been the subject of considerable discussion in this court and of some legislation by Congress. The ordinary rule, in the absence of legislation, is that, if the statute increases the duties of an officer by the addition of other duties germane to his office, he must perform them without extra compensation; but if he is employed to render services in an independent employment, not incidental to his official duties, he may recover for such services. Mechem on Public Officers, secs. 862, 863. Acting upon this principle, it was held by this court in 1833 that, in an action brought by the United States against a public officer, the court might allow by way of offset an equitable claim for the disbursement of public moneys and other services rendered to the government under orders of the head of a department, though there were no act of Congress providing for the case. *United States* v. *Macdaniel,* 7 Pet. 1; *United States* v. *Ripley,* 7 Pet. 18; *United States* v. *Fillebrown,* 7 Pet. 28. See also *Gratiot* v. *United States,* 15 Pet. 336; *S. C.* 4 How. 80.

Apparently in consequence of these decisions, Congress, on March 3, 1839, passed an act, (5 Stat. 339, 349, c. 82, § 3,) which, as amended August 23, 1842, (5 Stat. 508, 510, c. 183, § 2,) provided "that no officer in any branch of the public service, or any other person whose salary, pay or emoluments is or are fixed by law or regulations, shall receive any additional pay, extra allowance or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatsoever, unless the same shall be authorized by law, and the appropriation therefor explicitly set forth that it is for such additional pay, extra allowance or compensation." This provision was subsequently carried into the Revised Statutes, § 1765. Of this statute, it was said by this court in *Hoyt* v. *United States,* 10 How. 109, 141: "It cuts up by the roots these claims by public officers for extra

compensation, on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of Congress. The prohibition is general, and applies to all public officers, or *quasi* public officers, who have a fixed compensation." This language was somewhat limited by Chief Justice Taney in *Converse* v. *United States*, 21 How. 463, 471, wherein he says of these provisions: "They can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law." An allowance was made by the court in this case (three of its members dissenting) to a collector of customs as commission for the purchase of supplies for the light-house service throughout the United States, so far as such purchases were made for light-houses outside of his district, and beyond the limits to which his duties extended. See also *United States* v. *Brindle*, 110 U. S. 688.

Further construing this statute, it was held in *United States* v. *Shoemaker*, 7 Wall. 338, that a collector of customs was not entitled to offset, in a suit against him by the United States, compensation for disbursements made for building a custom-house and marine hospital at the port where he was collector. See also *Hall* v. *United States*, 91 U. S. 559, wherein items for set-off for extra services and expenses were excluded; and *Badeau* v. *United States*, 130 U. S. 439, in which a retired army officer accepting pay under an appointment in the consular service was held to be precluded from receiving salary as an officer in the army.

In *United States* v. *Saunders*, 120 U. S. 126, it was held that this act had no application to two distinct places, offices or employments, each with its own duties and compensation, but both held by one person at the same time. In delivering the opinion of the court, in this case, Mr. Justice Miller observed that "the purpose of this legislation was to prevent a person holding an office or appointment, for which the law provides a definite compensation by way of salary or otherwise, which

is intended to cover all the services which, as such officer, he may be called upon to render, from receiving extra compensation, additional allowances or pay for other services which may be required of him either by act of Congress or by order of the head of his Department, or in any other mode, added to or connected with the regular duties of the place which he holds."

We think that the construction given to this section in these cases is conclusive against the claim of the clerk for per-diem services, in the drawing of juries, or for such services as are not taxable, as orders, certificates or the like, under sec. 828, fixing the compensation of clerks. These services are not rendered in a distinct capacity as jury commissioner, but are incidental and germane to his regular duties as clerk.

2. An item for attendance on the Circuit Court at Macon by deputy for several days was disallowed by the Comptroller upon the ground that the clerk had been allowed a per-diem for his personal attendance upon the court at Savannah upon the same day, the Comptroller holding that the clerk was entitled to but one per-diem for any one day, although the court might be in session at two or more places, and the clerk be represented at one of those places by a deputy. By Revised Statutes, § 624, the Circuit Court is authorized to appoint deputies of the clerk upon his application, and provision. is made by sections 626 and 839 for compensation to such deputies to be paid by the clerk, and allowed in the same manner as other expenses of his office are paid and allowed. By section 796 the legal responsibility of the clerk for the acts of his deputy is recognized. Under such circumstances, when the law provides expressly for the appointment of a deputy, and authorizes the clerk to pay his compensation as a part of his office expenses, there can be no question that his acts as such deputy should be recognized as the acts of the clerk himself, and that the clerk is entitled to like fees for the performance of such acts. It would not be claimed that the clerk would not be entitled to his fee for clerical services in entering orders, etc., performed by his deputy. No valid distinction can be made in this particular between such charges and the ordinary per-diem charges for attendance.

Among the fees provided for the clerk by section 828 are $5 a day for his attendance upon the court "while actually in session," with a qualification contained in section 831, that " when the Circuit and District Courts sit at the same time, no greater per-diem or other allowance shall be made to any such officer than for an attendance on one court." As the Circuit and District Courts are ordinarily held together at the same time and place by the District Judge sitting both as judge of the District and of the Circuit Court, and cases in both courts are disposed of indifferently, and without reference to the court in which they are pending, the obvious purpose of this proviso was to limit the officials to a single per-diem for attendance upon both courts. Where, however, the two courts are held in different places, or, as in this case, in different divisions of the same judicial district, upon the same day, or where a court is held by the regular District Judge at one place, and a different branch or division of the same court is held at another place by the Circuit Judge or a District Judge designated under the statute for that purpose, the reason of the rule does not apply. In such a case a separate staff of officers is necessary for each place, and equitably each is entitled to fees for attendance. We think the last clause of section 831 should be limited to cases where the court sits not only at the same time, but at the same place. It is unnecessary to decide whether, when the district consists of two divisions, and courts are held in both divisions by the same judge and officers, they are one court or two. It is sufficient for the purpose of this case to hold that the sessions are separate, and that the clerk is entitled to charge for his own attendance at one place and for that of his deputy at another.

3. The eighth item relates to the case of one Clayton, who was removed under Revised Statutes, sec. 1014, by order of the judge to the Northern District of Georgia for trial. No objection is made to the particulars of this item, except to the charge for docketing and indexing, which cannot be allowed, as the proceeding is not a "cause" within the meaning of section 828, providing for docket fees. The application to the judge is a summary one, and accompanied by a copy of the

indictment, information or commitment of the commissioner before whom he has been examined, and ordinarily no evidence is required except as to the identity of the accused, when the judge issues a warrant for his removal, and no papers are required to be filed with the clerk.

4. Items 10 and 11, for entering orders approving the accounts of marshals and other officers, are allowed upon the authority of *United States* v. *Jones, ante,* 672, just decided.

5. Item 13 is for making reports of the amount of fees due by the United States to jurors and witnesses for travelling and attendance, and for filing orders of the court to pay the same. The practice in the Southern District of Georgia, with regard to the payment of fees due by the United States to witnesses and jurors is stated by the court below to be as follows: (*Erwin* v. *United States,* 37 Fed. Rep. 470, 483.) "When a case has been disposed of and the witnesses are discharged by the district attorney from further attendance, they report to the clerk's office. The clerk then ascertains the exact amount due them for attendance and mileage, by examination of their subpœnas, questioning them as to the place from which they have travelled, and comparing their statements with a table of distances kept in his office for that purpose, and the witness is sworn on a jurat drawn on his subpœna ticket to the correctness of his claim. If any doubtful question arises it is referred to the presiding judge for his decision. The days attended, mileage and amounts due the respective witnesses are then entered on a report, which is signed by the clerk and submitted to the court for its approval." If the court adjudge the report correct, he endorses upon it an order for the payment of the witnesses and jurors. The only criticism to be made upon this practice is in requiring separate orders to be made in each case.

The practice in most districts allows the witness or juror to appear before the clerk, make oath to his mileage and attendance, and receive a ticket or memorandum of the amount due him, which he presents to the marshal, who takes his receipt upon a large roll opened for the signature of all such jurors and witnesses as are paid off during the term. One order is

then made to pay all persons whose names are on the roll, and the expense of a separate order in each case is thereby avoided. In the Southern District of Georgia the practice seems to have been for each witness or juror, as he was discharged, to appear separately or in small numbers before the clerk, who administered the oath, for which he charged 10 cents; drew a report, for which he charged 30 cents; entered an order on the minutes, 30 cents; filed copy of the same, 10 cents; made a copy of the same to accompany the marshal's accounts, 20 cents; and annexed his certificate thereto, 15 cents. The clerk's charges thus aggregated $1.15 for the payment of a witness, whose fees may not have exceeded $1.50, or of a single juror, whose fees may not have exceeded $2. Any practice which puts the government to such an expense is burdensome, vexatious and oppressive. In the present case, a separate report seems to have been made, and a separate order issued whenever a juror or witness was discharged, or a small number were discharged together; and the item contains charges for drawing 332 reports at 30 cents each, and filing 358 orders at 10 cents each, the Comptroller allowing the items for entering the orders and making copies of the same for the marshal. In view of the petty character of these claims, if the clerk be competent, it would seem that the practice usually pursued would sufficiently protect the government, and would render unnecessary a scheme which seems to have been skilfully devised for the multiplication of fees. This charge must be disallowed.

6. Item 18 is for drawing three recognizances in a single criminal case, and was disallowed by the Comptroller upon the ground that one recognizance for all the witnesses would have been sufficient. We agree with this conclusion, and the item will, therefore, be disallowed, unless it be made to appear that the witnesses could not conveniently have recognized together.

7. Item 17 is for entering upon the final record the proceedings before the committing magistrate, namely, affidavit, warrant of arrest, marshal's return, and finding of the commissioner of probable cause of defendant's guilt, upon which the information is founded; commitment to jail in default of

bond, recognizance where given, and justification of surety, and waiver of homestead exemption, where it is waived; petition and order for subpœnas on part of defendant at the expense of the government, commitment under sentence, and marshal's return $60.75.

While we held in the case of *United States* v. *Van Duzee*, 140 U. S. 169, 170, ¶ 1, that the clerk was entitled to a fee for filing papers sent up by the commissioner, they evidently form no part of the record in the Circuit Court and the clerk is not entitled to a fee for entering them. The record proper begins with the indictment or information and ends with the sentence and commitment. The proceedings before a commissioner are principally for the information of the district attorney. In *United States* v. *Van Duzee*, 140 U. S. 169, 176, ¶ 9, the clerk was allowed to recover for so much of the record as included the order of the commissioner binding the party to appear before the grand jury, on account of a rule of the court in that case requiring this order to appear in the final record.

This disposes of all the questions raised in the brief of the Attorney General, and the judgment of the court below will, therefore, be

*Reversed, and the case remanded, with directions to reduce the judgment in conformity with this opinion.*