Peelle, J.,
delivered tbe opinion of tbe court:
Tbe claimant seeks to recover special compensation for services performed by bim as district attorney witliin bis judicial district, wbicb services, be claims, are “not covered by salary or fees.”
Tbe claim was transmitted to tbe court by tbe Secretary of tbe Treasury, at tbe request of tbe First Comptroller of tbe Treasury, under tbe provisions of Revised Statutes, section 1063, as set forth in finding v, as involving controverted questions of law, etc.
Tbe first two items of bis claim (a and b) are for services, rendered witbin bis judicial district at tbe request of tbe Attorney-G-eneral in taking the depositions of < ertain witnesses to be used in cases pending, respectively, in tbe district courts for tbe districts of New Jersey and Arizona.
Tbe next three items of charge are for services rendered witbin bis district at the request of tbe Attorney-General (e) in consulting with and advising tbe secretary of tbe board of management of tbe United States Government exhibit at the World’s Columbian Exposition at Chicago, concerning a claim against tbe defendants for sodding around their building, etc.; (cl) for investigating and reporting to tbe Attorney-General concerning certain attachment proceedings instituted against certain gold nuggets, part of tbe exhibit of tbe Government of New South Wales, and for advising tbe customs officers in relation thereto, and (e) for advising tbe Secretary aforesaid concerning, and for securing tbe dismissal' of, certain garnishee proceedings against bim in favor of one who bad done work for a subcontractor under a contractor and creditor of tbe defendants, etc.
In tbe case of Garter (31 C. Cls. R., 344), recently decided, tbe court held that it was witbin tbe scope and authority of the Attorney-General, under Revised Statutes, sections 363 and 366, to employ one who was at tbe time a district attorney as special counsel to assist in a cause on appeal to tbe Circuit Court of Appeals sitting witbin bis judicial district from a judgment rendered by a district court for another district.
Tbe right of recovery in that case turned on tbe question as to whether tbe services bad been performed by tbe claimant as district attorney, for if tbe services bad fallen witbin bis official duties tbe Attorney-Gen eral could not have changed tbe official character of it by employing bim as special counsel.
*412 So, in this case, if the services were such as the claimant was required to perform as district attorney, his employment therefor by tbe Attorney-General, or his performing the service at his request, would not relieve him from the official character of such services.
The duties of district attorneys, in respect to all civil and criminal cases arising within their respective districts, are set forth in Bevised Statutes, section 7715 and the salary and fees to which they are entitled, except perhaps in prize cases, are covered by Bevised Statutes, sections 770, 823, 824, 825, 827, 299, and such statutes as 1980, 3085, and Act March 1,1879 (1 Supp. to R. S., par. 9, p. 227), except that where the fees and emoluments of his office, over and above the necessary expenses, including necessary clerk hire, exceed $0,000 iier year, the excess of such fees, other than those accruing under sections 825 and 827, is to be paid into the Treasury of the United States as provided by Bevised Statutes, sections 835 and 844.
That the fees and emoluments of district attorneys might be regulated and limited as provided in the foregoing sections, Bevised Statutes, section 1705, prohibits them from receiving “any additional pay, extra allowances, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
It would be difficult to conceive of stronger or more explicit language. The purpose and effect of that statute was construed in the case of Hoyt v. United States (10 How., 109, 141) in these words:
“It cuts up by the roots these claims by public officers for extra compensation on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of Congress. The prohibition is general and applies to all public officers, or quasi public officers, who have a fixed compensation.”
That statute thus construed stands as the law, and Congress, by the Act June 20, 1874 (1 Supp. to R. S., 2d ed., p. 18), still further provided:
“Sec. 3. That no civil officer of the Government shall hereafter receive any compensation or perquisites, directly or in *413 directly, from the Treasury or property of tlie United States beyond bis salary or compensation allowed by law: Provided, That this shall not be construed to prevent the employment and payment by the Department of Justice of district attorneys as now allowed by law for the performance of services not covered by their salaries or fees.”
So that, unless there is some- law authorizing the employment of district attorneys by the Department of Justice “for the performance of services not covered by their salaries or fees,” they can not be so employed.
Nor can they receive “any additional pay, extra allowance, or compensation in any form whatever” as district attorneys unless “authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
In respect to the litigation and law business in which the United States are interested as parties or otherwise, the Attorney-General, under Devised Statutes, sections 355 to 366,, and especially under section 362, has the supervision and control, as held by this court in Perry’s Case (28 C. Cls. R., 483, 491).
In this same connection the Supreme Court, in the case of United States v. Smith (158 U. S., 346, 356), said:
“ It is essential to the interests of the Government that in all suits, criminal and civil, in which it is interested, the Attorney-General shall be at liberty to call upon the district attorney to represen tit, and his compensation therefor, whether measured by the fee bill or not, is a part of the fees and emoluments of his office.”
If such be the rule concerning the duties of district attorneys in respect to suits in which the Government is interested, we see no reason why the same rule should not apply in matters other than suits, requiring professional services where the Government is interested, arising within their respective districts.
A district attorney may be required to perform additional duties, germane to his office, without extra compensation, “but if employed to render services in an independent employment, not incidental to his official duties, he may recover for such services,” as was held in the case United States v. King (147 U. S., 676, 679).
It was upon this latter holding that the court awarded judgment to the claimant in the Garter Case (supra).
*414 In the ease of Gibson v. Peters (150 U. S., 342), the court, in construing Kevised Statutes § 380, held that it was the duty of a district attorney to appear in a suit in his district in behalf of the receiver of a national bank without other remuneration than that coming from his salary and authorized fees and such additional compensation as was expressly authorized by law.
And so, by the Act March 3, 1803 (Supp. to R. S., vol. 2, last clause, par. 7, p. 125), it is made the duty of district attorneys to represent the Indians “ in all suits at law and in equity ” in “ States and Territories where there are reservations or allotted Indians,” leaving their compensation to be regulated by the fee bill, and, of course, limited to their maximum compensation.
The claimant bases his right to recover special compensation for the services performed under the several appropriation acts beginning October 2, 1888 (25 Stat. L., 541), and repeated each year since, as follows:
“ For payment of district attorneys, the same being for payment of such special compensation as may be fixed by the Attorney-General for services not covered by salary or fees, five thousand dollars.”
In later acts Congress, in making appropriations for payment to district attorneys of their regular fees, uses this language:
“ For payment of United States district attorneys, the same being for payment of the regular fees provided for by law for official services, two hundred and fifty thousand dollars.”
And because of the language there used, as contradistin-guished from the language in the appropriation for payment of “ special compensation” for services “not covered by salary or fees,” the claimant’s counsel ably contends that the one is for official and the other for unofficial services. But we do not so understand the act.
One was the appropriation to pay the regular fees, i. e., the fees provided for by law as expressed in the act, while the other was an appropriation of $5,000, placed under the control of the Attorney-General, not to pay special counsel or attorneys provided for under Kevised Statutes, sections 363 and 366, but to pay district attorneys for services performed by them “ not covered by salary or fees.”
These, appropriation acts do not define the duties of district attorneys nor determine the character of the services performed *415 by them, but merely provide the money with which to pay— first, for services performed for which the law provides regular fees; second, for such services as are “ not covered by salary or fees.”
It does not follow that because there is no provision In the fee bill for payment that therefore the services performed do not come within their official duties.
Under Eevised Statutes, section 355, the Attorney-General may require district attorneys to perform certain services in respect to the title to public property within their respective districts, for which no fee or other compensation is provided unless covered by their salaries; and in reference to this the court, in Garter’s Case (supra), said:
“The salary of $200 a year given-by section 770 was evidently intended by Congress to cover such incidental services as are not provided for by specific or analogous fees, such as those which may be required of them by the Attorney-General under Eevised Statutes, section 355, in respect to the title to real estate.”
The language used in the appropriation of $5,000 presupposes some law requiring district attorneys-to perform services for which no compensation by way of salary or fees is provided; and in such cases the Attorney-General, by the language of the appropriation, is authorized to pay them “ such special compensation ” as he may fix.
Such special compensation can only be paid to district attorneys, and of course for services performed by them as such; bence such services, though “ not covered by salary or fees,” come within their official duties, otherwise no payment could be made to them out of the appropriation. (See United States v. King, supra.)
In this view the appropriation is in the nature of an amendment to the fee bill (sec. 824), leaving to the discretion of the Attorney-General the application of the appropriation to such services as district attorneys are required to and may perform, u not covered by salary or fees.”
This, we think, is a wise provision, as it is next to impossible for Congress to provide by law specific fees for every item of service which a district attorney may be required to perform.
Their maximum compensation is fixed at $6,000 per year (sec. 835); and that they may not be deprived of earning that *416 sum if their services warrant it, Congress by the appropriation provides that for any services rendered by them for which no compensation is provided by salary or fees, they shall be paid therefor “ such special compensation as may be fixed by the Attorney-General.”
Did Congress by this brief appropriation method intend to change the policy so stringently outlined in the statutes cited against the payment of any additional or extra compensation ?
Such statutes to be modified or appealed sliouid be by language so clear and explicit as to admit of but one meaning.
“Nothing is better settled than that repeals, and the same may be said of annulments, by implication, are not favored by the courts, and that no statute will be construed as repealing a prior one unless so clearly repugnant thereto as to admit of no other reasonable construction.” (Cope v. Cope, 137 U. S., 682, 686.)
The appropriation act contains no repealing clause — covers only a portion of the subject — and we are unable to see any repugnancy between it and the statutes prescribing the duties and fixing the compensation of district attorneys,- lienee the special compensation provided for to district attorneys by the-appropriation, we hold, was intended to cover services falling within their official duties for which no compensation by way of salary or fees had theretofore been provided. (District of Columbia v. Hutton, 143 U. S., 18, 27.)
The jn’oviso to the Act June 20, 1874 (supra), presupposed the existence of some law authorizing the Department of Justice to employ and pay district attorneys “ for the performance of services not covered by their salaries or fees.”
But we are aware of no such law. This was the view of Comptroller Lawrence, but he held that, because it had been the practice or custom of the Attorney-General to approve-accounts for like services, the proviso had the effect to legalize-such practice.
This court, however, in SmitWs Case (26 C. Cls. R., 568, 576)-said:
“If there were an existing practice or custom to employ and pay district attorneys in cases not then allowed by law, this proviso clearly implies that it is not excepted from the preceding general prohibition.
“But if Congress acted upon a mistaken understanding of the existing law, we can not see how the proviso made a new law. It was held by the Supreme Court in Postmaster- *417 General v. Early (12 Wheat., 148) thate a mistaken- opinion of the legislature concerning the law does not make the law,’ unless ‘the mistake is manifest from words competent to make the law for the future.’
“We find no words in this proviso competent'to make the law for the future, as held by the Comptroller.” ; • ■
This of course would not apply where a district attorney was “employed to render services in an independent employment not incidental to his official duties,” as held in the case United States v. King (supra).
The language of the appropriation of $5,000, as we have said, presupposes some law requiring district attorneys to perform services for which no compensation is provided.
The Attorney-General is not thereby authorized to require of district attorneys the performance of any service not theretofore required of them.
The only authority or discretion thereby lodged in him is that for services rendered for which no compensation is provided they shall be paid “such special compensation” as he may fix.
Not special compensation because the services performed were not within their official duties, but special because differ: ent from their regular fees; designed for a particular purpose and confined within a definite field of action, i. e., “for services not covered by salary or fees.”
For instance, the Attorney-General is not authorized to fix special compensation for services performed by them for which specific fees are provided.
In reaching the conclusion we have we are not unmindful of the fact that Congress at times have made appropriations to pay district attorneys for services designated as “unofficial,” as by the Deficiency Appropriation Act March 2,1889 (25 Stat. L., 905, 925).‘
But such appropriations are made in the exercise of political power, which of course is not lodged in the courts, and hence we are not at liberty to allow fees or other compensation to district attorneys unless the same be authorized by law.
Tested by what we have said, how stands the claimant’s account?
Items a and b, for services rendered in taking depositions, clearly fall within the sixth clause of the fee bill (sec. 824), ' “For each deposition taken and admitted in evidence in a cause, two dollars and fifty cents.”
*418 Although these depositions were taken to be used in causes pending in the courts in districts other than the claimant’s, we see no reason why the fee bill in this respect will not apply, and hence no additional pay, extra allowance, or compensation can be made.'
If the depositions were not used, that we think was for the defendants to show, as the depositions were taken in causes pending in courts outside of the claimant’s district. The presumption is they were used.
It is to the interest of the Government and within the scope and authority of the Attorney-General to require that in such incidental matters official reciprocity and mutual action should be recognized.
Item o appears to have been for services for which no compensation is provided by salary or fee, and therefore we think the special compensation so fixed by the Attorney-General is allowable.
It was within the scope and authority of the Attorney-General to require this service to be performed by the claimant as district attorney. He is the law officer of the Government and, under Revised Statutes, section 362, may call upon district attorneys to render . such service within their respective districts.
Items d and e are more difficult to determine. The services appear to have been rendered in cases in which the United States were interested, though not a party of record.
In respect to this class of service, Revised Statutes, section 299, provides:
“All accounts of the United States district attorneys for services rendered in cases instituted in the courts of the United States or oí any State when the United States is interested, but is not a party of record, or in cases instituted against the officers of the United States or their deputies or duly appointed agents for acts committed or omitted or suffered by them in the lawful discharge of their duties shall be audited and allowed as in other cases, assimilating the fees, as near as may be, to those provided by law for similar services in cases in which the United. States is a party.”
It is of course difficult for the court to determine the extent of the interest of the United States in the cases mentioned in the two items of charge, but it is evident from the findings that they had some interest in the result of the litigation, otherwise the claimant would not be seeking compensation from them for the services so rendered.
*419 So, without stopping to critically examine the Act April 25, 1890 (26 Stat. L., 62), authorizing the celebration of “the four hundredth anniversary of the discovery of America by Christopher Columbus,” and providing for the appointment by the President of a commission therefor, to be known as the “World’s Columbian Commission,” we hold that the services so rendered come within section 299.
But at this point we are met with the difficulty of fixing the fee in item cl, as the findings do not show what disposition was made of the cause. But, assuming that the cause has been disposed of by trial or dismissal, the lowest assimilated fee to which the claimant would be entitled is $10, under clause 3 of the fee bill (sec. 824), as “in cases at law, when judgment is rendered without a jury,” and so we decide to allow that fee. If the case was disposed of by jury trial it was for the claimant to show that fact.
As to item e, the findings show that the cause was dismissed, and hence the assimilated fee of $10 will be allowed.
The next question arising is, are the allowances thus made a part of the fees and emoluments of his office?
Certainly those coming under the fee bill are, but are those accruing under the appropriation for special compensation?
Bevised Statutes, section 833, provides:
“Every district attorney, clerk of a district court, clerk of a circuit court, and marshal shall, on the first days of January and July in each year, or within thirty days thereafter, make to the Attorney-General, in such form as he may prescribe, a written return for the half year ending on said days, respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his ■office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act; and every marshal shall state separately therein the fees and emoluments received or payable for services rendered by himself personally, those received or payable for services rendered by each of his deputies, naming him, and the proportion of such fees and emoluments which, by the terms of his service, each deputy is to receive. Said returns shall be verified by the oath of the officer making them.”
By that section the claimant was required to make to the Attorney-General written return “of all the fees and emoluments of his office of every name and character,” etc. There can be no mistake about what that language means. _
*420 So "that whatever compensation was paid to Mm as district-attorney becomes a part of the fees and emoluments of bis office.
Then, by Eevised Statutes, section 834, it is provided:
“The preceding section shall not apply to the fees and compensation allowed to district attorneys by sections eight hundred and twenty-ñve and eight hundred and twenty-seven.
“All other fees, charges, and emoluments to which a district attorney or a marshal may be entitled, by reason of the discharge of the duties of his office, as now or hereafter prescribed by law, or in any case in ivhich the United States will be bound by the judgment rendered therein, whether jmescribed by stat-uteor allowed byacourt,or anyjudge thereof, shall be included, in the semiannual return required of said officers by the preceding section.”
There an exception is made in respect to the fees and compensation he receives for services rendered under Eevised Statutes, sections 825 and 827 — that is, he is not required to include in his written return to the Attorney-General such fees, so that they are excluded from his emolument account — but as to all the other fees and emoluments of his office which he is required to include in such semiannual return (sec. 833), he shall not be allowed “for his personal compensation, over and above the necessary expenses of his office, including necessary clerk hire, to be audited and allowed by the proper accounting-officers of the Treasury Department, a sum exceeding $6,000 a year, or exceeding that rate for any less time than a year ” (R. S., sec. 835), and any surplus over and above the amount allowed to be retained by him is to be paid into the Treasury, as provided by Eevised Statutes, section 844.
The court is not at liberty to add an exception which Congress did not make.
If Congress by the appropriation of $5,000 had intended that such sum should be in addition to or in excess of the maximum compensation of district attorneys they would have so said. What they did not see fit to do in this respect the court can not remedy.
• Therefore, when Congress has said that a district attorney shall include in his semiannual returns “all the fees and emoluments of his office of every name and character,” except such-fees and compensation as may accrue to him under sections-825 and 827, and then provides that as to such fees and emoluments so returned he shall not be allowed for his personal compensation, as aforesaid, “a sum exceeding $6,000 a year,. *421 the court must hold that in the absence of a statute giving him extra or additional compensation in excess of $6,000 a year he can not recover.
This view is sustained by the decision in the ease United, States v. Smith (supra).
But' whether the fees and compensation herein allowed will or will not exceed the claimant’s maximum compensation is a question which still remains open for adjustment in the Treasury Department, as was held in the case of The United States v. Harmon (147 U. S., 268, 282).
And this applies to the special compensation fixed by the Attorney-General in item e under the appropriation act (supra).
The defendants have interposed a counterclaim, which is rather in the nature of an offset, growing out of the settlement of the claimant’s accounts for the year 1891, whereby he was charged during that year with $8,222, and credited with his maximum compensation, $6,000; with Office expenses and clerk hire, $899.45 ($6,899,45), leaving due the defendants the sum ■of $1,322.55.
But this latter sum was still further reduced by the accounting officers retaining and paying into the Treasury fees which, had been earned by the claimant during the years 1892 and 1893, amounting in all to $450, leaving a final balance against him of $872.55, which is still due and payable to the defendants.
Whether this balance arose from the claimant’s failure ta account for and pay over, as provided by law, all the fees and emoluments of his office, or whether the amount was paid to hint by mistake in law or otherwise, we deem it immaterial now to inquire, as the bringing of this action had the effect to open up such settlement, if made, and the court is thereby invited to go behind such settlement to correct any errors which may have occurred, as was held in the Yoes Case (30 C. Cls. R.., 370), following the decision in the McHlrath Case (102 U. S., 426, 441).
A later case, and one perhaps still more applicable to the case at bar, is that of United States v. Burchard (125 U. S., 176, 180).
In this latter case a retired officer of the Navy had been allowed more pay than the law entitled him to, and the court held that “overpayments made at one time by mistake could be corrected and properly charged against credits coming in afterwards. His pay was fixed by law, and the disbursing *422 officers of tbe Department bad no authority to allow hira any more. If they did, it was in violation of law, and be bas no right to keep what be thus obtained.”
That case seems to be directly in point, for tbe overpayments which were made to tbe claimant in the year 1891, or tbe fees earned in that year for which he failed to account, were reduced by.credits coming in afterwards. In either event “he has no right to keep what he thus obtained,” and the defendants are therefore entitled to recover the sum of $S72.55.
Whether this sum shall be reduced by the allowances herein made to the claimant for his services in the year 1893 will depend upon whether he received in that year his maximum compensation, for if he did he can not be paid or credited with the amount so allowed, as such compensation can only be' allowed from the fees and emoluments as provided by Revised Statutes, section 843.
But if he did not receive in that year his maximum compensation, then he will be entitled to credit for the amount, or so much thereof as may bo necessary to make up his maximum compensation for that year, as provided by section 835; and to the extent of any sum which may thus be credited to him, he will be entitled to have the same set off against so much of the amount herein found due the defendants.
As these are matters for adjustment in the Treasury Department, as hereinbefore stated, judgment will be suspended for such adjustment in accordance with this opinion.