Barney, Judge,
reviewing facts found to be established, delivered the opinion of the court:
This suit was brought by the plaintiff to recover an unpaid balance of salary and official fees as surveyor general of the State of Louisiana claimed to be due his decedent. ‘ These two claims will be considered separately.
I. The decedent served several terms as surveyor general of the State of Louisiana, but the only one necessary to be here considered is an appointment and commission as such which he received on the 19th of January, 1905, and under which he served until May 13,1909, when he received a letter from the Commissioner of the General Land Office advising him that the office of the surveyor general of Louisiana would be permanently closed and discontinued on July 1, 1909, when the records of the office would be turned over to the State of Louisiana as soon as proper provision should be made by the legislature of that State for their receipt, pursuant to sections 2218, 2220, and 2221 of the Revised Statutes. June 19, 1909, decedent received a communication from said commissioner, under date of June 17, 1909, advising him that Congress had omitted to make an appropriation for the maintenance of his office, in consequence of which a messenger had been detailed to visit his office and supervise the transfer of its records to the State building at Baton Rouge, La., and to select such of the records and Government property as might be considered advisable to remove to Washington. Decedent was directed to render needful assistance to such messenger for this purpose. This communication also stated that, as the State of Louisiana had failed to provide by legislation for the custody of such records, a custodian named had been appointed for that purpose, who would receipt to such messenger for said records. Statements were also made regarding such part of the property in the office, such as stationery, etc., as might be thought advisable to send to Washington or to sell at auction by such custodian,
*238 Pursuant to this communication a messenger from the General Land Office proceeded to the office of said surveyor general in New Orleans, La., caused an inventory to be made of all the records and property therein, and on the 15th day of July, 1909, turned over the same to one Arthur Gascon, who had been appointed as custodian for that purpose by the Secretary of the Interior by an order, as follows:
“DEPARTMENT OP THE INTERIOR,
“ 'Washington, June 16, 1909.
“Arthur Gascon, of Louisiana, is hereby appointed custodian of the documents and records pertaining to the office of the surveyor general of Louisiana upon the discontinuance of that office, at a salary of $1,000 per annum, to take effect upon July 1, 1909.
“ Salary payable from the appropriation for completing field notes, etc., of surveys in Minnesota, North Dakota, and Louisiana.
“ By transfer from chief clerk, office of surveyor general of Louisiana.
“ B. A. Ballinger. Secretary.
“ F. D.”
Said Arthur Gascon remained in custody of said records until June 30, 1910, when, the legislature of the State of Louisiana having enacted the legislation necessary to that end, he delivered the same to the duly authorized officer of said State. Decedent performed no duties connected with the office of surveyor general of Louisiana after he was dispossessed of the office as hereinbefore stated, and has been paid no salary since such dispossession.
The plaintiff now claims that he is entitled to recover the salary of the office from July 1, 1909, the date when the office was taken from decedent, to June 30,1910, or one year. This claim is upon the assumption that said office was not legally vacated before the latter date, on which day the records of the office were turned over to the State of Louisiana. The decedent’s commission was for the term of four years from June 18, 1905, but he continued to hold the office after the expiration of his term under section 2222, Eevised Statutes, which provides as follows *.
“Every surveyor general, * * * except where the President sees cause otherwise to determine, is authorized *239 to continue in the uninterrupted discharge of his regular official duties after the day of the expiration of his commission, and until a new commission is issued to him for the same office, or until the day when his successor enters upon the duties of such office.”
It is upon this statute that the claim in this suit is founded.
In this connection it should be noted that section 2218, Revised Statutes, provides that “whenever the surveys and records of any such districts (i. e., surveying districts) are completed, the surveyor general thereof shall be required to deliver over to the secretary of state of the respective States, including such surveys, or to such officer as may be authorized to receive them, all the field notes, maps, records, and other papers appertaining to land titles within the same; and the office of surveyor general in every such district shall thereafter cease and be discontinued.”
Section 2221, Revised Statutes, provides that such field notes, etc., shall not be turned over to the authorities of any State until such State has provided by law for the reception of the same.
The claim in this case is to be determined upon the construction to be given to the foregoing statutes and the effect to be given to the orders issued by the land commissioner and the Secretary of the Interior which appear in the findings, as well as subsequent legislation of Congress which will be hereafter considered.
It is contended by the plaintiff that the office of surveyor general for the State of Louisiana was never lawfully discontinued until June 30, 1910, on which date the field notes, etc., pertaining to that office were turned over to the officer appointed by the State of Louisiana to receive the same; and that prior to that time decedent was never removed from said office by competent authority. In other words, it is contended that the decedent continued to hold the office of surveyor general of Louisiana until he was removed therefrom by the automatic action of section 2218, Revised Statutes, which provides that when the field notes, etc., of the surveyor general’s office are turned over to the proper *240 authorities of any State “the office of surveyor general in every such district shall thereafter cease and be discontinued.”
On the other hand, it is contended by the def andants that the order of June 16, 1909, quoted in full in Finding Y, in effect terminated the term of office of decedent, and that said order was in law the act of the President; and numerous authorities are cited to sustain that contention. It is also contended by the defendants that like, effect should be given to the order of the President of January 9,1915, also quoted in Finding V.
The Legal effect of these orders will be neither discussed nor decided, as we think the office of surveyor general of the State of Louisiana was effectually abolished by Congress by the act of March 4, 1909, 35 Stat. L., 945, 987. That statute provides as follows:
“ To enable the Secretary of the Interior to complete the unfinished drafting and field-note writing pertaining to surveys in the States of Minnesota, North Dakota, and Louisiana, caused by the discontinuance of the offices of the surveyors general in those States, six thousand five hundred dollars.”
The authority of Congress to abolish the office of surveyor general of any State, of course, is not denied, and the only question in this case is whether it can do so by indirection; that is to say, can Congress by recognizing and indorsing such abolition thereby accomplish such a result.
We have received but little help from either of the parties in this suit in the discussion of this question, and in the limited time afforded us for that purpose no direct authority upon the question has been found and recourse must be had to the general rules upon the construction of statutes.
If two inconsistent acts are passed at different times, the last is to be obeyed; and if obedience can not be observed without derogating from the first it is the first which must give way. Every act is made for some purpose, and its operation is not to be impeded by some previous inconsistent enactment. Dwarris on Statutes, 531. It is fundamental in the construction of statutes that the intention of the framers *241 must prevail, and the only serious problem is as to how that intention is to be ascertained. Of course, if the language of the statute is clear and unambiguous we are to go no further to ascertain its meaning. Id., 550 et seq.
It is well settled that a subsequent statute which is repugnant to a prior one necessarily repeals the former one, although it does not do so in terms. Sedgwick on Statutes, 104. In the construction of statutes, if possible, effect must be given to every word contained in it. Hardcastle on Statutes., 41. When jurisdiction is assumed to exist and provision is made as to its mode of exercise, this carries with it by implication jurisdiction of the proceedings so regulated. State v. Miller, 23 Wis., 634. Thus, in the instant case Congress made provision for the expenses incident to the discontinuance of the office of surveyor general for the State of Louisiana, and failed to make any appropriation for its continuance. A recognition and indorsement of the discontinuance of said office could not have been expressed in clearer language.
In addition to this it may well be presumed that Congress knew, as it doubtless did, of all previous correspondence and transactions in connection with this office and enacted this legislation in the light of such knowledge. It says “ caused by the discontinuance of the office of surveyor general in [Lousiana].” That could mean but one thing, and that was that the said office had been discontinued on and after a certain date. We think this legislation had the effect of a direct discontinuance of said office.
II. We come now to consider the next item of the plaintiff’s claim, which is for fees alleged to have been earned during decedent’s incumbency of this office and remaining unpaid. The act of March 3, 1831, 4 Stat., 492, creating the office of surveyor of the public lands for the State of Louisiana, provided as follows:
“Be it enacted Toy the Senate and House of Representatives of the United States of America in Congress assembled, That a surveyor general for the State of Louisiana shall be appointed, who shall have the same authority and perform the same duties respecting the public lands and private land *242 claims in the State of Louisiana as are now vested in and required of the surveyor of the lands of the United States, south of the State of Tennessee, or of the principal deputy surveyors in the said State; * * *.”
“ Sec. 5. And be it further enacted, That the surveyor general to be appointed in pursuance of this act shall establish his office at such place as the President of the United States may deem most expedient for the public service; and that he shall be allowed an annual salary of two thousand dollars, and that he be authorized to employ one skillful draughtsman and recording clerk whose aggregate compensation shall not exceed one thousand five hundred dollars per annum; and that the fees heretofore authorized by law for examining and recording surveys be, and the same are hereby, abolished; and any copy of a plat of survey, or transcript from the records of the office of the said surveyor general, shall be admitted as evidence in any of the courts of the United States or Territories thereof; and for every copy of a plat of survey there shall be paid twenty-five cents, and for any transcript from the records of said office there shall be paid at the rate of twenty-five cents for every hundred words by the individuals requiring the same.”
It will be seen that the statute quoted provides an annual salary of $2,000 for the surveyor general of Louisiana, abolishes fees for examining and recording surveys, and provides for certain other fees to be paid, with no provision as to their disposition. Since July 1, 1878, Congress has only appropriated $1,800 per year for such salary “in full compensation, etc.,” so that since the latter date the annual salary has been but $1,800.
It appears that prior to May 1, 1907, the surveyor general of Louisiana made no report of any such fees collected by him, but since that time he has been required to deposit the same to the credit of the United States Treasury. It is now contended by the plaintiff that these fees were a part of the emoluments of this office.
Section 1765, Revised Statutes, is as follows:
“No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law. or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or *243 duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
Considerable stress is placed by the plaintiff upon the fact that prior'to the act of March 3, 1831, establishing the office of surveyor general of the State of Louisiana, and when the jurisdiction of that officer covered a much larger territory, he was allowed certain fees as a part of his compensation. We believe, however, that we are only to look to the act of March 3, 1831, to determine that question, because that was the law, and the only law, providing for his compensation after that date. In this connection it should also be noted that the act of'March 3,1803, making certain regulations for the then vast territory of Louisiana, among other things provided for a surveyor for the same at an annual salary of $1,500 (sections 10, 13), and made no provision for any fees for him. While the act of April 21, 1806, 2 Stat. L., 391, making further regulations for the same territory' and making provision for deputy surveyors therein and their compensation, provided for the same in the following language: “And each of the said principal deputies shall receive an annual compensation of five hundred dollars, and in addition thereto the following fees, etc.” Sec. 9.
The language of section 1765, Revised Statutes, is too plain for misunderstanding and has always been interpreted according to its letter. King v. United States, 147 U. S., 676; Woodwell v. United States, 214 U. S., 82; 41 C. Cls., 357.
- We see no application of the Weeks case (unreported) to the suit at bar. The statute there under consideration provided in terms “ that the register shall be entitled to a fee, etc.” We think that in this case it would require a strained and entirely unauthorized construction, indeed, to hold that the decedent was entitled under the act of March 3, 1831, supra, to retain the fees therein provided for.
It follows from the foregoing that the petition must be dismissed.
All concur.