PULESTON v. UNITED STATES.

(Circuit Court, W. D. Florida. January 31, 1898.)

1. MARSHAL'S FEES—DEMURRER.
Allegations of fact contained in brief of respective counsel cannot be relied upon to sustain a demurrer, where the record does not disclose the matter relied on.

2. SAME—EXPENSES IN ENDEAVORING TO ARREST—HORSE HIRE.
The contract for the hire of a horse by a deputy marshal, not exceeding the $2 allowed by law in endeavoring to arrest, is of such an inseparable nature that it cannot be said that one-half of the expense should be merged in the fee for transportation returning, and the whole sum should be allowed as an actual expense in endeavoring.

3. SAME—FEE FOR COMMITTING ON WARRANT OF REMOVAL.
A marshal is entitled to a fee of 50 cents for committing a prisoner on warrant of removal in a district to which he has been transported in accordance with law.

4. SAME—SERVICE OF SUBPŒNA.
A person committed to jail to answer a charge before the circuit court can be taken before a commissioner by a deputy marshal, provided he has a subpœna for such attendance; and for this service the deputy is entitled to the regular fee.

**5. SAME—SERVICE OF SUBPŒNA.**

A marshal is not bound to take judicial notice of the fact that cases were to be tried on the same day before the same commissioner; and he is bound to serve subpœnas duly issued by a commissioner, and the circumstance that a witness was examined in another cause before the same commissioner does not deprive the marshal of his regular statutory fee therefor.

**6. SAME—SUNDAY PER DIEM.**

The marshal is entitled to his regular per diem where the court was opened and adjourned on Sunday, in pursuance of section 671, Rev. St.

**7. SAME—ORDER TO BRING IN PRISONER TO COURT.**

Orders made by the court upon the marshal to bring prisoners to court for trial who have been committed by commissioners to jails of other counties are not within the provisions of Rev. St. § 1030, that no writ is necessary to bring into court any prisoner or person in custody, but that it shall be done upon order, and no fee shall be charged therefor by the clerk or marshal, which relates solely to prisoners and witnesses while in attendance upon court; and the marshal is entitled to charge mileage in the going to serve such orders.

**8. SPECIAL DEPUTY—NECESSITY OF OATH.**

Before the act of congress of May 28, 1896, the marshal was authorized to appoint a special deputy according to the practice adopted by law in the state wherein his district is located; and although such deputy has not taken the oath prescribed by section 782, Rev. St., if his appointment is valid under existing laws relative to appointment of deputy sheriffs in the state of his district, fees earned by such deputy are properly chargeable to the United States.

**9. SAME—SLEEPING-CAR FARE.**

The marshal, while transporting prisoners to a penitentiary involving a trip of 36 hours, is entitled to sleep, and, as a part of his reasonable and actual expenses, to engage and use a sleeping-car berth.

**10. SAME—OFFICE EXPENSES—OATH TO ACCOUNTS.**

The marshal is entitled, under the act of congress of May 28, 1896, to be reimbursed for the expense of affidavits to his current accounts to the treasury department.

Buckner Chipley, for petitioner.

J. Emmet Wolfe, Dist. Atty., for the United States.

SWAYNE, District Judge. In this proceeding the petitioner seeks to recover the amount of certain fees charged by him for official services as marshal for the Northern district of Florida, which were included in his quarterly accounts to the government, and approved by this court, and thereafter disallowed and rejected by the accounting officers of the treasury department. The record discloses complete jurisdiction in this court, as conferred by the act of congress of March 3, 1887, all necessary prerequisites having been complied with. To certain of the items enumerated in the petition the district attorney has filed a demurrer, contending that it is apparent from an examination of said items that the same furnish no basis for a legal charge against the United States for any services or disbursements therein claimed. These items have been grouped and classified in the petition as follows:

Schedule A. Proper mileage actually traveled in the service of writs in United States cases. Certain items only under this schedule have been reached by the demurrer, the first (item 9) being a claim for mileage in this district; and the record does not disclose, as contended by the district attorney, that the prisoner was not carried

before the nearest commissioner. This item cannot thus be reached by demurrer, and the same may be said of items 11, 13, 15, 16, 17, 18; and these questions here involved will be passed until the record, after plea and taking of testimony, discloses the exact nature of the claim. Apparently, they are correct.

Schedule B. Actual expense in endeavoring to arrest United States prisoners: Expense of horse hire where it was necessary to procure same in making arrest, the marshal claiming the expense therefor is in going, the return being merely incidental, and the expense being the same whether the return is made in the conveyance or not. It is maintained on the part of the petitioner that under clause 18, § 829, Rev. St., the marshal is entitled to actual expenses, not to exceed two dollars a day, in addition to his compensation for service and travel, when endeavoring to arrest a man charged with an offense against the United States. In all of these items the deputy had received the warrant, and thereupon he hired a horse for the ordinary fee of two dollars, and went in search of the prisoner. The accounting officers maintain that one-half of the expense of hiring the horse should be merged in the fee for transportation returning; but it must be borne in mind that he is entitled to two dollars, if expended, in addition to travel and service; and, by clause 20, he is entitled to a fee of ten cents per mile for the prisoner. This latter is a fee, and not an expense. The hiring of a team is not a severable contract. It is a plain, simple contract, and covers the use of a horse for a certain time. It is immaterial whether the deputy returns with the horse, or sends it back as soon as he arrives at the place of arrest. The cost is for the time used, and the horse must be returned. And, in support of the demurrer, it is contended that these disallowances are based upon the theory, which it is contended is correct, that, the moment the arrest is made, the expense of endeavoring ceases. The subsequent expenses are covered by the mileage allowed, of ten cents per mile each for the prisoner, deputy, and guard. If the horse is hired, say, to go 20 miles, and return, for a given sum, half of that sum is for the return trip, and is covered by the allowance for mileage.

The question may be briefly stated thus: Is the expense of two dollars an amount which the deputy is compelled to pay for horse and carriage in order to reach the place of arrest? If this is answerable in the affirmative, it disposes of the question in favor of the petitioner. The items demurred to are all stated in the petition thus:

"U. S. vs. ———. Horse hire, endeavoring to arrest, disallowed; claimed to have been covered by the transportation returning. That was not the case. In hiring a team to go to a certain place, the entire cost of the team is for going only, the return is simply incidental to the going. If the person hiring the team does not return, the cost is the same, as the team must necessarily return; and, if the person hiring desires to return with the team, it is his privilege to do so, without further cost."

And, although it involves a confused statement of fact with what is contended to be the law applicable thereto, yet I can but conclude that a contract of this nature cannot be thus divided and separated into two trips, with two separate sums, one payable by the United

States, and one personally by the marshal. It clearly lies within the field of common sense to say that the hire of a horse for a trip of this kind is a simple contract, calling for the payment of the stipulated hire; and under the terms of these contracts, as disclosed in the pleadings, it seems to be immaterial whether one rides 10 or 20 miles, whether one goes and returns by the same conveyance, or sends it back after arriving at the destination. If the party owning the conveyance could demand in advance the two dollars for its use for a day, clearly it is but an expense in endeavoring; and I cannot say that the record discloses circumstances relative to these items that lead to any other conclusion. The charge was no more than the statute permitted to be allowed. Rev. St. 829, cl. 18. There is no contention that the services were not actually rendered, and disbursements charged were not actually made, in lawful money; and under the ruling of the supreme court in case of U. S. v. Harmon, 147 U. S. 279, 13 Sup. Ct. 327 (item 5), I think these items should be sustained as to the demurrer.

Schedule C, items 1 to 14, inclusive. Fees for committing prisoners on writs and orders of court in writing under seal, issued by proper authority: (1) Commitments on order or warrant of removal from a jail to the place of trial, where prisoner had been previously committed by commissioner in a county jail other than the place of trial; (2) commitments on writ of temporary commitment; (3) commitments on writs of attachment.

Item 1 is a claim for commitment in Alabama, on a warrant of removal. It is claimed in brief by district attorney that a deputy marshal or marshal can do no legal official act outside of his district, and hence could earn no fee by such act. By section 1014, Rev. St., it is provided, among other things, that:

"Where any offender or witness is committed in any district other than that where the offence is to be tried, it shall be the duty * * * of the marshal to execute a warrant for his removal to the district where the trial is to be had."

And by section 1029, Rev. St.:

"Only one writ or warrant is necessary to remove a prisoner from one district to another. One copy thereof may be delivered to the sheriff or jailer from whose custody the prisoner is taken, and another to the sheriff or jailer to whose custody he is committed, and the original writ, with the marshal's return thereon, shall be returned to the clerk of the district to which he is removed."

These sections of the Revised Statutes expressly confer, on the marshal of the district where the arrest is effected, authority, and make it his duty to execute a warrant of removal when signed by the judge. He must either turn over the prisoner to the marshal of the other district, or commit the prisoner to jail there. Either would be a commitment into custody. The account states that the commitment was to the jail of Montgomery, Ala.; and it may be further stated that the accounting officers have allowed the mileage outside of the district, which would lead me to conclude that the government does not contend that the deputy had no authority, but merely that this is

not such a commitment as is contemplated by law; but under section 829, cl. 19, I conclude it is a proper charge.

Items 2 to 5, inclusive. It does not appear clear to me upon the face of the record, what is the exact nature of these charges. Apparently they are correct, but in the briefs of counsel the matter is argued at length, based upon matter outside of the record. I do not desire to pass upon this question while the record proper is uncertain, and the question not properly presented.

In the remaining items, 6 to 14, inclusive, the same question is involved as in Schedule H; and, under that head, I have taken up the discussion of the question here involved, and, under the ruling, these items are correct.

Schedule D. Actual service of subpœna on witnesses on the part of the United States, same having been issued by proper authority: (1) On witnesses at the time in jail, under charge for offenses against the United States; (2) upon witnesses at the time under bond to appear and answer another and different charge, but under no obligation to attend at time subpœnaed for; (3) upon witnesses under no process.

These charges are for service of subpœna of witnesses for attendance in criminal causes heard before a commissioner. Items 5, 6, and 7 seem correct on their face, as the record discloses that these witnesses were neither under arrest nor in attendance in other causes. The demurrer cannot reach them. As to items 2, 3, 4, and 12, it is contended that, first, where a person has been committed by a commissioner upon a charge to answer before the next term of the circuit court, that the prisoner is still subject to the verbal order of the commissioner for his production as a witness before him in another cause, and that under section 1030, Rev. St., no fee can be charged for a subpœna. But I cannot find anything either in the wording or the history of the passage of this section that leads me to construe it to cover a hearing or proceeding before a commissioner, but it plainly refers to the circuit and district courts, and to prisoners then at the place of holding the courts. As applied to prisoners bound over by a commissioner, I cannot say, as a matter of law, that a jailer would be bound to deliver up a prisoner in his custody under commissioner's mittimus for trial before the circuit court, upon the verbal order of a deputy marshal, or of the commissioner transmitted verbally by the deputy, or that it would be the duty of the deputy, without any compensation, to go to a jail, and bring a prisoner into a commissioner's court as a witness. It is at best very doubtful practice. In this instance the commissioner issued the subpœnas. Whether it might have been superfluous or not, yet, if it was a lawful writ, the marshal was bound to execute it (opinion of February 9, 1859, 9 Op. Attys. Gen. 265; opinion of May 16, 1840, 3 Op. Attys. Gen. 536); and, having executed it, the deputy is entitled, under clause 5, § 829, Rev. St., to his fee.

A further question is raised in items 1, 8, 9, 10, and 11, where a party was before a commissioner on a particular day, as a witness or defendant, and a subpœna had been issued by the commissioner for his attendance in another cause, which happened to be

tried on the same day as the case in which the person was already in attendance in. The contention in these items seems to be that the marshal was presumed to know that the cases were to be tried on the same day when he received the writs of subpœna, and that, as a matter of law, the marshal was under no legal obligation to serve subpœnas duly issued, and that a witness summoned in one case was under obligation, upon verbal instructions from the commissioner, to remain after the case in which he had been summoned had been disposed of, in order to testify in any other case which might subsequently have a hearing. It was further contended that section 877, Rev. St., applies to hearings before commissioners; but this cannot be sustained, as the section expressly refers to the circuit and district courts. I cannot agree with any one of the foregoing propositions, and as to these items, upon the face of the record, it appears that these writs were properly issued and served, for which the marshal is entitled to the statutory fee.

Schedule F. It appears that the court was opened pursuant to adjournment on Friday, June 26th, and from day to day thereafter, until the expiration of four days, in accordance with the provisions of section 671, Rev. St. The marshal and other officers of the court, except the judge, were present from day to day, including Friday, Saturday, Sunday, and Monday, each of which days the court was actually opened and adjourned, as the minutes of the court disclose. For this Sunday per diem the marshal claims his regular fee, as on other days. The district attorney contends that, Sunday being always dies non, this per diem is illegal, and the demurrer should be sustained; that section 671 does not contemplate the opening of court on Sunday; when it says from day to day, it undoubtedly means legal days. It may be true that Sunday is, in contemplation of law, "dies non," but this is not without many exceptions, and I cannot say that the opening of the court on Sunday is legally void as to all purposes. The opening of court by the marshal is, at most, a ministerial act, requiring no judicial function. The performance of a mere ministerial act on Sunday is not necessarily void. It has been held that where, by the rule, four days are required in the reckoning time on notice of hearing, an intervening Sunday is to be included in the computation. So, also, as to time of payment of taxes. See Cressey v. Parks, 75 Me. 387; Taylor v. Palmer, 31 Cal. 240. Inasmuch as court was actually opened, and I cannot find that such proceeding was inherently void, I will overrule the demurrer as to this item.

Schedule H. Actual mileage traveled from place of holding a term of court to place where a United States prisoner has been committed by a commissioner awaiting trial, with order or warrant of removal to another jail for confinement during trial at court. This matter has been brought to my attention several times before. While sitting as judge of the circuit court, I have at each term of court been requested by the district attorney to grant an order for the removal of prisoners who had been confined in jail at places many miles from the place where court was then being held. This order was

granted, and the clerk directed to enter it upon the minutes. In addition thereto, I instructed the clerk to make three certified copies to be placed in the hands of the marshal. One of these was intended for the use of the jailer whose custody the prisoner was to be taken from, one to be delivered to the jailer to whom the prisoner was to be delivered to await trial, and the third to be returned with indorsement of service thereon to the clerk of the court. It is contended by the district attorney that section 1030 of the Revised Statutes applies to these circumstances, and that it precludes any claim for a fee. But it seems apparent to my mind that this section has no application to these circumstances, and I can best express this conclusion in the words of the late Justice Jackson (then circuit judge) in the case of Taylor v. U. S., 45 Fed. 538 (item 8):

"This item * * * is confined to instances only where the prisoners have been committed by commissioners for trial to the jails of counties where the court is being held. After the marshal has executed the commissioner's mittimus writ, it is returned to the commissioner, and a copy transmitted to the clerk. Rev. St. § 1014. The writ upon its return is functus officio, and no further service can be had under it. The copy filed with the jailer is his. The marshal cannot take the prisoner from such jail, and transport him, it may be for a long distance, without process. Nor do I think that section 1030 of the Revised Statutes applies to such cases. It is as follows: 'No writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody, but the same shall be done on the order of the court or district attorney, for which no fee shall be charged by the clerk or marshal.' This provision, and section 877, Rev. St.; above quoted, are taken from section 3 of the act of February 26, 1853 (10 Stat. 169), and were originally a single clause, the first sentence of which applied to the summoning of witnesses generally on behalf of the United States, their attendance before the grand and petit juries, as required by the court or district attorney, until discharged by the court or district attorney. Then follows the provision in question that 'no writ shall be necessary to bring into court any prisoner or person in custody [meaning, of course, a witness held in default of bail], or for remanding him from the court into custody.' All this clause of the original section of the act seems, therefore, to relate to prisoners and witnesses after their arrival, and while in attendance upon a session of court. The separation of the provisions into different sections (877 and 1030) of the Revised Statutes in no way affects their construction. Rev. St. § 5600. It would be unreasonable to presume that this provision was intended by congress to impose upon the marshal the burden and expense of transporting prisoners from distant counties to the court for trial, without compensation, or without the allowance of even such expenses as would be necessarily incurred by him. Here the removals were made under an order of court, as the statute provides. And, in construing this statute, the court, in Erwin v. U. S., 37 Fed. 470, 487, unhesitatingly comes to the same conclusion, after a careful and painstaking examination of the whole subject, and a review of all the statutory provisions. This construction, limiting the operation of section 1030 to the place where the court is held, seems to be the only reasonable one which can be given without working hardship never contemplated by congress. And, where the construction of these fee statutes 'admits of two interpretations, the words should be construed liberally in favor of the officer, and not strictly in favor of the United States.' McKinstry v. U. S., 40 Fed. 813 (opinion per Judges Lamar and Pardee). The mileage actually traveled in the execution of these orders should therefore be allowed petitioner."

Schedule I. Fees earned by special deputy in service of subpœnas, who had not taken oath of office, as prescribed by section 782, Rev. St., but who had been specially appointed and designated by the marshal for this particular service. The petitioner claims that sec-

tion 788, Rev. St., confers the right to appoint a deputy in the same manner that a sheriff of this state might appoint a deputy. The section reads as follows:

"Sec. 788. The marshals and their deputies shall have, in each state, the same powers, in executing the laws of the United States, as the sheriffs and their deputies in such states may have, by law, in executing the laws thereof."

Section 1247, Rev. St. Fla.:

"Sheriffs may appoint deputies to act under them, who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in executing their office the sheriff shall be responsible."

There is no provision of the Florida statutes prescribing any oath to be taken by a deputy sheriff before he is authorized to perform the duties of his office, and I understand it to be the practice not to require any oath. Deposit Co. v. Buddington, 23 Fla. 514, 2 South. 885. In the schedule here contested, it appears that the marshal was compelled to appoint a deputy specially to serve some subpœnas, and the deputy did not in fact take the oath prescribed by section 782. It has been several times held, in states where sheriffs may appoint special deputies to execute particular process, that service of process by a person specially deputized by the marshal to serve the same is legal, and cannot be disputed by the person upon whom the service is made. U. S. v. Jailor, 2 Abb. U. S. 265, Fed. Cas. No. 15,463; The E. W. Gorgas, 10 Ben. 460, Fed. Cas. No. 4,585; Hyman v. Chales, 12 Fed. 855; Jewett v. Garrett, 47 Fed. 625.

It would appear that section 788, Rev. St., confers on the marshal the same powers, not only in executing the laws of the United States, but in the method and manner of the execution. The appointment of a deputy to do a particular service is in the furtherance and a part of the necessary execution, and it appears a fair construction of section 788 to confer an additional right in the manner of appointment and qualification of a deputy marshal.

Schedule L. Sleeping-car fare for marshal, as an actual expense in transporting prisoners to penitentiary out of the state. It appears that the marshal was transporting prisoners to the penitentiary at Columbus, Ohio, a trip of 36 hours from Pensacola. He had employed guards, and during the trip took a berth in a sleeper. It is claimed on the part of the district attorney that it was his duty to continuously guard his prisoner during the 36 hours' travel. I do not think that the law imposes any such duty. It authorizes the employment of an additional guard for each prisoner. Under section 829, cl. 21, Rev. St., the marshal is allowed his reasonable actual expenses. And to say that a marshal is not entitled to sleep on a trip of 36 hours, but must stand guard all that time, is absurd. The account for sleeping-car fare is always allowed army and navy officers, witnesses on actual expense, district attorneys, marshals when otherwise traveling, and, in short, in all instances where government officials are on actual expense. The marshal, for this service, receives no compensation. His services and time are gratis, and it is but common justice that he should be allowed an opportunity to sleep as other travelers sleep, and to be reimbursed for the expense.

85 F.—37

Schedule M. Expense of proving accounts—that is, for affidavits, certificates, etc., to accounts—incurred by marshal after the passage of act of congress of May 28, 1896, allowing marshal salary in lieu of all fees and expenses, claimed as an actual expense. The petitioner claims that after the passage of the act of May 28, 1896, he became entitled to be reimbursed for all actual and necessary expenses in and about the conduct of his office, if it could be fairly presumed that it came within the purview of section 14 of said act, even though not expressly authorized by the attorney general. Section 14 of said act reads: "That the necessary office expenses of the * * * marshal shall be allowed, when authorized by the attorney general." I cannot suppose that the attorney general necessarily has to pass on a specific item, but may provide general rules relative thereto. In his instructions to the marshals, he requires the accounts of the marshal to be sworn to in a particular manner, although the law requires them to be sworn to, and furnishes the marshal with the necessary paper, forms of oath, etc.; and from this it may fairly be inferred that the expenses of the oath and certificates have been authorized. It is contended that the oath is one required by law, and, under the ruling in the cases of U. S. v. Allred, 155 U. S. 596, 15 Sup. Ct. 231, and U. S. v. Van Duzee, 140 U. S. 171, 11 Sup. Ct. 758, that the officer must bear the expense. In view of the fact that the supreme court was passing upon the question of expenses of rendering the accounts of a marshal as a fee officer, and who had to bear all the expenses of his office, the court, in speaking of this question, says:

"It follows from this section [18 Stat. 333, c. 95] that the officer has performed his duty by 'rendering' his accounts in proper form to the court, with the proper affidavit or oath in support of the actual and necessary performance of the services therein charged."

But, viewing the changed relation of the marshal to the government, the fact that he now draws a salary in lieu of all fees, which it seems the plain intent of congress should be regarded as a net salary, and inasmuch as it appears that provision has been made for all office expenses, actual expenses while engaged in service of all writs, while in attendance upon court, I cannot see but that to make an exception of the item would work a hardship never contemplated by congress, and to which the supreme court never intended this principle to apply. This view of the question was taken by the auditor recently, in which he says:

"The affidavit is required by section 13, Act May 28, 1896. As the account is for reimbursement of the actual expenses of a salaried officer, I decide that the charge is a proper one, and in accordance with the practice in the case of all salaried officers." 3 Dec. Compt. 430.

As the expense was an office expense, I think he properly paid the amount, instead of requiring the officer taking the oath to render an account therefor directly to the government. This seems to be the method with other expenses.

This disposes of all questions properly raised by demurrer. An order may be entered overruling the demurrer.