### PULESTON v. UNITED STATES.

(District Court, N. D. Florida. July 7, 1898.)

1. MARSHAL'S FEES—MILEAGE.

In the service of a writ, the only statutory requirement is that travel shall be actual, to be computed from the place where the process is returned to the place of service; and the circumstance that an interval of several days occurred after a portion of the distance had been traveled, and before its service, cannot defeat the marshal's claim for mileage.

2. SAME.

The marshal is entitled to mileage from the limits of his district to the commissioner having jurisdiction of a case, where, through mistake or ignorance, his deputy, acting under a warrant legal on its face, has taken custody of a person therein named, outside of his district, on the theory that a legal arrest, so far as the government is concerned, was effected immediately upon entry into the district in which the deputy could legally act.

3. SAME.

The proviso in the appropriation act of August 18, 1894, whereby no mileage is allowed to any officer violating the provisions thereof relative to the taking of prisoners before the commissioner or nearest judicial officer having jurisdiction under existing laws, affects only the appropriation thereby made, and does not have the effect of a general restriction.

4. SAME.

Without a certified copy of a complaint attached to a warrant issued by a commissioner, a commissioner or magistrate nearer the place of arrest than the commissioner issuing the warrant would be without jurisdiction to hear the case.

5. SAME.

The marshal is entitled to mileage computed according to paragraph 25, § 829, Rev. St., without regard to the question as to whether the arrest was effected by the deputy nearest the place where the prisoner was apprehended.

6. SAME—SERVICE OF COMMITMENT.

The marshal cannot disregard the lawful process or orders of the court, even though they are superfluous, but must execute such as are issued to him in the ordinary practice, for which he is entitled to the ordinary fee.

7. SAME — PER DIEM BEFORE COURT AND A COMMISSIONER ON THE SAME DAY.

A marshal is entitled to charge a per diem for services before a commissioner upon the same day that he was allowed a per diem for attendance upon the court.

8. SAME—PER DIEM OF DEPUTY.

The marshal is entitled to the per diem of his deputy where a case was set for hearing before a commissioner, and the deputy attended, but the defendant failed to appear, and his bond was estreated, and an attachment or alias warrant issued.

9. SAME—DISCHARGE OF DEFENDANT ON TEMPORARY RECOGNIZANCE.

The marshal is entitled to charge for the release of a defendant on bail before the commissioner, where such release involves the taking of a bail bond.

10. SAME—UNNECESSARY AND EXCESSIVE SERVICES.

In the absence of any showing of bad faith, the mere fact that after the issuance of a warrant, and before arrest, the defendant attended before the commissioner as a witness, but neither the commissioner nor the deputy had at that time any process for his arrest in their actual possession, would not be sufficient to justify the accounting officers of the treasury in disallowing all fees earned in the subsequent arrest, as unnecessary and excessive, especially where the account has been duly approved by a court in accordance with law.

11. SAME—EMPLOYMENT OF BAILIFFS.

The marshal is entitled to be reimbursed for sums disbursed to bailiffs in excess of three, and not exceeding five, allowed to be employed under section 715, Rev. St., employed by him under the order of a circuit or district court; and the appropriation act of August 18, 1894, and the proviso thereto attached, do not have the effect of general legislation, so as to repeal said section 715.

12. SAME.

The proviso above referred to authorizes the employment of not exceeding three bailiffs in each court; and where, incidentally, the business of the circuit and district courts for any district are both conducted in the same room, and presided over by the same judge, it does not follow that this proviso restricts the number of bailiffs in both courts to three, but, on the contrary, the court has the power to order the marshal to employ a double set of bailiffs,—one for each court.

(Syllabus by the Court.)

Buckner Chipley, for petitioner.
John Eagan, U. S. Atty.

SWAYNE, District Judge. The respective parties, by their attorneys, have filed a stipulation covering all the facts relied on in the case, leaving only to the court such questions of law as have not already been passed upon on the demurrer.

In items 3, 4, 5, and 22 of Schedule A, the question is presented as to whether mileage, under paragraph 25, § 829, Rev. St., should be continuous, or if the deputy can claim actual mileage traveled, when a part of the trip is made at one time, and after the lapse of several days the trip is completed. Said paragraph reads as follows: "For travel in going only, to serve any process, * * * six cents a mile, to be computed from the place where the process is returned to the place of service." Also, the act of August 18, 1894, which requires that the mileage of any deputy shall be actual and necessary. All that is required by these provisions of law is that the deputy to whom the writ was delivered actually and necessarily traveled the distance for which the marshal claims the mileage, which is clearly shown to be the case by the stipulation filed in this case.

Item 9, Schedule A: This item represents fees earned in a case where the defendant at the time of the issuance of the warrant was out of the Northern district of Florida. The deputy went out of the state, and induced the defendant, either by showing the warrant or otherwise,—it does not appear,—to go back into the district. No arrest could have been made on this process outside of the limits of the district, but as soon as the state line was crossed the defendant was in the Northern district of Florida; and the petitioner contends that an arrest was effected in the Northern

district of Florida, and that the marshal was entitled to mileage from the state line, to the commissioner in Florida, who in this instance proved to be the nearest to the place of entrance into the state. The comptroller has decided this question in favor of this contention. In re Account of D. T. Guyton (Sept. 26, 1894) Cousar's Dig. p. 76, item 23. It appears proper to regard the matter of this arrest in this light; for, otherwise, to disallow this item would have the effect of rendering the arrest entirely illegal, so far as concerns the acts of the deputy after he passed the state line, and came into the Northern district of Florida.

Items 11, 12, 13, and 16, Schedule A: It is admitted that the fees in all of these cases were earned where the prisoner was not taken before the commissioner nearest the place of arrest, but was taken before the commissioner who issued the warrant. In no instance was there a copy of the affidavit attached to the warrant as issued by the commissioner. The appropriation act of August 18, 1894, in which it was declared that no mileage was to be allowed a marshal for transportation of deputy and prisoner, etc., when not taken before the commissioner nearest the place of arrest, reads as follows:

"It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the commissioner or the nearest judicial officer having jurisdiction under existing laws, for a hearing, commitment, or taking bail for trial, and the officer or magistrate issuing the warrant shall attach thereto a certified copy of the complaint; and upon the arrest of the accused, the return of the warrant, with a copy of the complaint attached, shall confer jurisdiction upon such officer as fully as if the complaint had originally been made before him, and no mileage shall be allowed any officer violating the provisions hereof."

This act, in words and effect, only applies to money thereby set aside for certain expenses of the government, but does not place any general restriction upon the commissioners and marshals, but refers to the allowance of their fees at the treasury department out of this appropriation. The concluding phrase means, of course, "And no mileage [out of the money hereby appropriated] shall be allowed any officer violating the provisions hereof." It is usual and customary, where the witnesses are more convenient to the commissioner who issued the warrant, to take the prisoner before him, and especially where no copy of the affidavit is attached; thus saving the government large sums yearly in mileage of four witnesses or less, as the case might be; and, as there is no general restriction on the marshal, it lies in his discretion, especially where no bad faith, or inordinate desire to increase his fees, is shown. In U. S. v. Ewing, 140 U. S. 148, 11 Sup. Ct. 745, the court says:

"The cases of U. S. v. Dickson, 15 Pet. 141, and Minis v. U. S., Id. 423, are cited in support of this view. The limitation and effect of provisos in enacting clauses of a statute are considered in these cases, and the rule declared, in the first of them, 'that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms.' In the case of Minis v. U. S. it is said by Mr. Justice Story (page 445): 'It would be somewhat unusual to find ingrafted upon an act making special and temporary appropriations any provision which was to have a general and permanent application to all future appropriations.

Nor ought such an intention on the part of the legislature be presumed, unless it is expressed in the most clear and positive terms, and wherever the language admits of no other reasonable interpretation. The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought into its purview. A general rule, applicable to all future cases, would most naturally be expected to find its proper place in some distinct and independent enactment.' * * * In the case under consideration, if the proviso had been simply that commissioners should not be entitled to any docket fee, we should have had little doubt that it would be held as applying only to the $50,000 appropriated in the bill; but as the proviso contains a substantial re-enactment of the clause of the Revised Statutes (section 847) fixing the fees for similar services, with the prohibition against docket fees tacked thereto as an amendment, we find it impossible to give effect to the whole proviso without construing it as expressing the intention of congress to amend that clause of section 847."

It therefore clearly appears, under these rules of construction, that this proviso only applies to the money thereby appropriated. These items represent a meritorious case of an effort to save the government expense in mileage of witnesses.

It further appears from admissions herein, in the evidence, that there was no copy of the complaint or affidavit attached to the warrant issued in these cases. In the case of U. S. v. Donahower, 29 C. C. A. 342, 85 Fed. 547, the circuit court of appeals for the Eighth circuit, in construing this act, says:

"The circuit court finds as a fact that in each case included in this finding the warrant was not issued or made returnable before the circuit court commissioner before whom it was returnable by the connivance, at the request, or with the knowledge of the petitioner, but came into his hands-in the regular course of the business of his office, and was served and executed by him in obedience to its mandate; that it did not appear from the testimony that a certified copy of the complaint upon which each of the warrants was based was attached to the warrant; that in each case the mileage charged was actually and necessarily traveled by the plaintiff; and the several items included in the finding, amounting to $188.70, were therefore allowed. We think the items of this account were properly allowed by the circuit court. The finding of fact shows that in none of the cases included in the finding, for which charges have been made, was there attached to the warrant a certified copy of the complaint, which, under this statute, would be necessary to confer jurisdiction upon any commissioner or magistrate before whom the marshal might take the person arrested. Without the certified copy of the complaint attached to the warrant, a commissioner or magistrate nearer the place of arrest than the commissioner issuing the warrant would be without jurisdiction to hear the case. As stated by the circuit court, the marshal would have to obey the warrant in its legal effect; and, if no certified copy of the complaint was attached, to give jurisdiction to any other commissioner or magistrate he would—the warrant so directing—be obliged to take the arrested person before the commissioner who issued the warrant."

There can be no presumption that in any of these cases the certified copy of the complaint was not attached by the commissioner through the connivance or at the request of the marshal, and there has been no attempt to prove this, or even a suggestion on behalf of the government; and, with as well-considered authority as the foregoing, nothing could be added.

Item 15, Schedule A: In addition to the above, it may be suggested that United States officials, including United States district attorney, were instrumental in preferring charges against the de-

fendant in the case before the commissioner at Pensacola, and specially directed the marshal, after arresting the defendant, to bring him before the commissioner at Pensacola. The charge was of such a serious nature that no one anticipated the ability of the defendant to give bond, which in fact he never did. The Marianna jail was not in condition to accommodate the defendant in a suitable manner; and, as the defendant would be required to be brought to Pensacola for trial in any event, the government was in fact a gainer by the transaction. The marshal had no discretion in the premises, nor is it suggested that he connived at this method of prosecuting the defendant. He had nothing to gain, and, under the circumstances, should certainly be recompensed for the large expense he has been to in the premises.

Item 17, Schedule A: This item represents fees earned by a deputy to whom a warrant was delivered by the commissioner, and who effected the arrest of the defendant at a place which was nearer to the residence of another deputy; the department contending that the warrant should have been mailed to the other deputy. This contention seems frivolous and unfounded in law. The deputy was handed the warrant by the commissioner. He is not presumed to have had at that time any knowledge of the exact whereabouts of the defendant, and, if he effects an arrest, under the warrant, he is entitled, under paragraph 25, § 829, Rev. St., to his mileage, computed according to the language of said paragraph, which reads, "For travel in going only, to serve any process, * * * six cents a mile, to be computed from the place where the process is returned to the place of service." Thus it will appear that it was immaterial to the government, so far as concerns the amount of fees earned, what deputy effected the service.

Item 18, Schedule A: The same facts exist relative to this item as in item 15, and the same rule of law applies.

Schedule B: Nothing is developed by the facts in these items that calls for the further consideration of the court. This question was fully decided in the opinion on the demurrer. Puleston v. U. S., 85 Fed. 570.

Items 1, 6 to 14, inclusive, Schedule C, have been fully decided on the demurrer.

Items 2 to 5, inclusive, Schedule C: These items represent fees for committing defendants in instances where the clerk had issued a commitment under an order entered in the minutes to that effect, and was delivered to the marshal for service. The defendants had been committed previously, to await trial, but these commitments were issued after conviction, but before sentence. It is no defense that the writs may not have been necessary. The marshal cannot disregard the process or order of the court, even though they are superfluous, but must execute such as are issued to him in the ordinary practice, for which he is entitled to the ordinary fee. Opinion of May 16, 1840. 3 Op. 536; Cousar's Dig. p. 78, item 2. In U. S. v. Donahower, 29 C. C. A. 342, 85 Fed. 547, the court says:

"The seventh assignment of errors covers finding 11 of the findings of the circuit court, and is for the service of a bench warrant on a person then in the

custody of the United States marshal. The allowance of this item, amounting to $2, by the circuit court, we think should be sustained. The warrant was issued by the court. The marshal was bound to serve it, and was entitled to the fee charged for the service."

All items in Schedule D have been fully passed upon on demurrer.

Schedule E, item 1, arose through a mistake of the accounting officer of the treasury, and hence should be allowed.

Item 2, Schedule E: This item is for a per diem before a commissioner on a hearing on criminal charge. Disallowed because the marshal had charged a per diem in the circuit court on the same day. In U. S. v. McMahon, 164 U. S. 81, 17 Sup. Ct. 28, the court says:

"But, where a marshal attends examination before two different commissioners on the same day, we think he is entitled to his fee of $2 for the attendance before each commissioner. In the case of U. S. v. Erwin, 147 U. S. 685, 13 Sup. Ct. 443, we held that a district attorney was entitled to charge a per diem for services before a commissioner upon the same day that he was allowed a per diem for attendance upon the court, and the argument controlling our opinion in that case is equally applicable here. It is true that in that case the charge was for attending before the court and before a single commissioner upon the same day; but where the officer attends before two or more commissioners, who may hold their sessions at a distance from each other, we see no reason why he should not be entitled to his fee in the case of each commissioner."

The court in this case held that the principle applicable to the allowance of double per diem to district attorneys is "equally applicable" to the allowance of a double per diem to the marshal; and in this case the court went even further than the contention here, in allowing the marshal not only a per diem for attendance on court and a commissioner, but that he was entitled to a per diem in two commissioners' courts on the same day. This decision has been rendered since this disallowance, and the department did not have this authority to follow. There can be no question, under this decision, as to its propriety.

Item 3, Schedule E: This item involves the question as to whether a deputy is entitled to a per diem for attendance before a commissioner as for a hearing, when the case was set for trial on that day, but the defendant failed to appear, and his bond was estreated, and an attachment issued. "A hearing on a question of admission to bail, or on a motion to adjourn, or on arraignment or commitment, constitutes a 'hearing and deciding,' for the attendance upon which the marshal is entitled to a fee." Kinney v. U. S., 54 Fed. 313. The circumstance that the accused did not appear, and was in default, did not defeat the right to charge this fee. The deputy was required to attend, supposing, as he had a right to, that the defendant would appear as he had obligated himself to do; and the commissioner's court was open in order to determine the question of default. This was necessary, and thereupon, and by virtue of such determination, the case was continued, and an attachment issued. This seems such a hearing as the statute contemplates.

Schedule F: The questions here involved have been fully passed upon on the demurrer.

Schedule G: For discharging defendants on temporary bond. "The marshal is entitled to charge for release on bail before the com-

missioner, where such release involves the taking of a bail bond." Kinney v. U. S., 54 Fed. 313. Paragraph 19, § 829, Rev. St., allows the marshal, "for every commitment or discharge of a prisoner, fifty cents." It appears in this schedule that each discharge was upon a new and separate bail bond, and hence a correct charge.

Schedule H: The questions here involved have been fully passed upon on the demurrer.

Schedule I: The questions here involved have been fully passed upon on the demurrer.

Schedule J: This schedule includes a number of items representing all the fees earned in four criminal prosecutions, and were disallowed by the accounting officers as unnecessary and excessive. It is shown by the evidence that after the issuance of the warrants, and before the arrest, the defendants attended before the same commissioner as witnesses in other cases; but the deputy to whom the warrants had been issued did not have the same in his possession at the time the said persons attended as witnesses, and hence no legal arrest could have been effected. The mere fact that after the issuance of the warrants the defendants attended before the commissioner as witnesses would not authorize either the commissioner or the deputy to arrest them without duly-issued process, which the deputy did not then have. It seems clear that this fact alone, without the showing of some bad faith on the part of the marshal or his deputy, would not defeat this claim for fees. There is no legal right for the accounting officers to determine in such a summary manner whether services are unnecessary and excessive. The services were actually rendered, at a large expense to the marshal, and the court has approved his accounts therefor.

Schedule K: This schedule represents items which were suspended for explanations, but after full explanation by the marshal they were neglected by the treasury, and have never been paid. Under paragraph 20, § 829, Rev. St., the marshal is entitled to 10 cents per mile for transportation of guard. The items therefor appear correct.

Schedule L: The questions here involved have been fully passed upon on demurrer. The same is true of Schedule M.

Schedule N: This schedule represents certain sums disbursed to bailiffs employed under specific order of the circuit and district courts, sitting in the same room, and presided over by the same judge. All amounts in excess of that paid to three bailiffs were disallowed. Section 715, Rev. St., reads:

"The circuit and district courts may appoint criers for their court, * * * and the marshals may appoint such number of persons, not exceeding five, as the judges of their respective courts may determine, to attend upon the grand and other juries, and for other necessary purposes, who shall be allowed for their services the sum of two dollars per day, to be paid by and included in the accounts of the marshal, out of any money of the United States in his hands. Such compensation shall be paid only for actual attendance, and, when both courts are in session at the same time, only for attendance on one court."

The sundry civil appropriation act (August 18, 1894) provides, "For pay of bailiffs and criers, not exceeding three bailiffs and one

crier in each court, * * * $150,000;" and the acts of March 2, 1895, and June 11, 1896 (sundry civil appropriation acts), have exactly the same wording relative to the employment of bailiffs. It thus appears that this proviso is attached to each appropriation bill. Does this lead to the conclusion that congress intended to give this the general effect of a law? If so, then why the yearly repetition? Its insertion in these acts only gives it the effect of a proviso, and it clearly can have no effect as general legislation, within the meaning of the language of the court in U. S. v. Ewing, supra:

"In the case under consideration, if the proviso had been simply that commissioners should not be entitled to any docket fee, we should have little doubt that it would be held as applying only to the $50,000 appropriated in the bill."

The general provision of law, which stands unrepealed by this proviso in the appropriation bill, makes the employment of five bailiffs legal. There is a concluding fact relative to this item which has been overlooked by the government. The language of the act refers "each court," and when, incidentally, the business of both courts is crowded upon one judge, it does not follow that the work is therefore thrown upon one set of three bailiffs. The marshal is entitled in such instances to three bailiffs in each court, and, as there were only five for which he claims compensation in his account, he has confined himself to the number prescribed by this proviso. There is no contention that he did not comply with the law relative to their appointment. But, on the other hand, the employment was under the express order of the court, requiring this number, and was made only after the court had found that the business then before it could not be dispatched economically or satisfactorily without the assistance of five bailiffs, distributed with regard to the relative business of the two courts.

The answer admits that this court approved each of the said items in the current quarterly accounts as presented, and which now form part of the files and records of this court; and, as such order is prima facie evidence of their correctness, in the absence of clear and unequivocal proof of mistake on the part of the court, it should be conclusive. U. S. v. Jones, 134 U. S. 483, 10 Sup. Ct. 615; Kinney v. U. S., 54 Fed. 313.

A further finding of facts is, in my judgment, deemed unnecessary, owing to the complete stipulation, covering all matters relative to the items in controversy; and a judgment for the petitioner may be entered for the amount claimed, after deducting the several amounts admitted in the replication to have been paid.