SWIFT v. UNITED STATES.

(Circuit Court, D. Massachusetts.   April 6, 1904.)

No. 856.

1. FEDERAL COURTS—MARSHALS—BAILIFFS—PAY.

Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], authorizes the appointment of bailiffs for the Circuit and District Courts, not exceeding five for each court; and Sundry Civil Appropriation Act March 2, 1895, c. 189, 28 Stat. 958 [U. S. Comp. St. 1901, p. 2590], provided for the pay of bailiffs and criers, not exceeding three bailiffs and one crier "in each court." *Held*, that the words "in each court," in the appropriation act, referred to the Circuit and District Courts mentioned in section 715, and not to occasions when the business of such courts is transacted by one judge holding both courts at the same time and place, and hence the marshal was entitled to allowance for per diem compensation paid to additional bailiffs in excess of three, but not exceeding six, in attendance on the Circuit and District Courts on days when such courts were held by a single judge at the same time.

2. SAME—PAY AS DEPUTY MARSHALS.

Bailiffs are not entitled to pay for attendance on the court for the same days on which they also attended court as deputy marshals, and thereby earned a fee of $5 each for the marshal, under Rev. St. § 1765 [U. S. Comp. St. 1901, p. 1207], providing that no officer in any branch of the public service shall receive any additional pay, in any form whatever, and for any other service or duty whatsoever, unless authorized by law; the main duties of bailiffs and deputy marshals being the same.

3. SAME.

The restriction of three bailiffs to each court in the sundry civil appropriation bill relates only to the payment of bailiffs from the amounts appropriated for that purpose during the several years in which the restriction was inserted, and did not repeal Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], authorizing five bailiffs for each court; and where, by order of the court, four bailiffs were employed in charge of the jury on two successive Sundays during the trial of a case, the marshal was entitled to an allowance for all four.

4. SAME—SERVING SUBPŒNAS—EXPENSES.

Where bailiffs were appointed to attend on the juries and "for other necessary purposes," as authorized by Rev. St. § 715, and, it appearing that all deputy marshals were otherwise employed, and certain witnesses were required in court, the marshal authorized the bailiffs to serve the subpœnas, which, under the state laws, any disinterested person might do, the marshal was entitled to the allowance of the expenses of such bailiffs in serving the subpœnas, under Rev. St. § 830, authorizing payment of the marshal's expenses for "contingencies that may accrue in holding the courts."

5. SAME—EXPENSES IN CIVIL CASES.

Where a marshal paid expenses incurred in civil cases out of the appropriations for marshal's fees and expenses, and thereafter the marshal collected the amount from the parties to the suits, and paid the same to the clerks of the courts, who thereupon paid it into the United States Treasury, and, the payments from the appropriation being disallowed, the marshal was again compelled to pay the same into the Treasury of the United States to the credit of the appropriation, he was entitled to recover the amount so paid from the United States.

6. SAME—OFFICERS IN CHARGE OF PRISONERS AND WITNESSES—MEALS.

The expenses paid by a marshal for meals of officers in charge of prisoners and witnesses in custody are allowable under Rev. St. § 830 [U. S. Comp. St. 1901, p. 639], authorizing the payment by the marshal of expenses for "other contingencies which may arise in the courts."

7. Same—Trial of Offenders—Stenographers—Employment—Authority
of Attorney General.

 A United States attorney on the eve of the trial of an offender requested
authority from the Attorney General to employ a stenographer to take the
testimony for $10 per diem if the report was not transcribed, and, if
transcribed, 25 cents per folio of 100 words, with no per diem, and, if
part transcribed, proportion of per diem deducted. The Attorney General
authorized employment at $10 per diem, or 25 cents per folio if tes-
timony was transcribed. The stenographers rendered a bill for nine
per diems, which was paid by the marshal, and thereafter, on request,
the stenographers furnished the United States attorney a transcript of
the testimony for one whole day and two half days, and rendered a bill
therefor containing a credit of $20 for the per diem compensation for the
time of taking the testimony which was so transcribed, which was allowed.
*Held*, that a disallowance of $70 for the per diems spent in taking the
evidence not transcribed, on the ground that the Attorney General re-
quired the United States attorney to have and pay for transcribing the
evidence on the entire trial in case he required a transcript of any of the
testimony, was erroneous.

Henry W. Swift, pro se.
Henry P. Moulton, U. S. Atty.

COLT, Circuit Judge. This is a suit by Henry W. Swift, United
States Marshal for the District of Massachusetts, to recover from the
United States certain disbursements made by him, which, in the set-
tlement of his accounts, were disallowed by the Comptroller. The
case was heard on petition, answer, and agreed statement of facts.

The first item was a disallowance of $54 paid as a per diem compen-
sation for certain additional bailiffs, in excess of three in number, and
not exceeding six altogether, who were in attendance upon the Cir-
cuit and District Courts on days when only one judge was present,
and held both courts at the same time. The disallowance occurred
during the quarter ending September 30, 1895. The position of the
government is based upon the Comptroller's construction of the fol-
lowing provision in the sundry civil appropriation act of March 2,
1895: "For pay of bailiffs and criers, not exceeding three bailiffs and
one crier in each court. * * *" Act March 2, 1895, c. 189, 28
Stat. 958 [U. S. Comp. St. 1901, p. 2590]. In construing this provi-
sion, the Comptroller said:

 "In my opinion, the words 'in each court,' in the appropriation, do not refer
to the Circuit and District Courts when presided over at the same time by the
same judge, but refer to cases where different judges are sitting at the same
time in different places, and holding either circuit or district courts, or sep-
arate divisions of either of those courts, for in such cases each judge is prac-
tically holding a separate court. This view seems to accord with the principle
established in United States v. King, 147 U. S. 676–682 [13 Sup. Ct. 439, 37
L. Ed. 328]." 2 Comp. Dec. 534.

Section 715 of the Revised Statutes [U. S. Comp. St. 1901, p. 579]
authorizes the appointment by the marshal of bailiffs for the Circuit
and District Courts, not exceeding five for each court. The effect of
the foregoing provision in the appropriation acts of 1895 and the
years following was to limit the number of bailiffs to three for each
court, who should be paid from the appropriation for those years.
The words "in each court" manifestly refer to the Circuit and Dis-

trict Courts mentioned in section 715. They may also be held, by construction, to refer to different divisions of the same court, and also to the Circuit Court of Appeals. But there is nothing in this provision to justify the ruling that "each court" has reference to occasions when the business of the Circuit and District Courts is crowded upon one judge holding both courts at the same time and place. Puleston v. United States (D. C.) 88 Fed. 970, 977.

United States v. King, upon which the Comptroller relies, lends no support to his position, but is rather antagonistic to it. That case held that, while a clerk was not entitled to two per diems under sections 828, 831, Rev. St. [U. S. Comp. St. 1901, pp. 639, 640], when the Circuit and District Courts sit at the same time, he was entitled to two per diems when the court sits in different places, since the words "at the same time" in section 831 should, by construction, "be limited to cases where the court sits not only at the same time, but at the same place." 147 U. S. 676, 682, 13 Sup. Ct. 439, 37 L. Ed. 328.

The Comptroller's position is not only unsupported by the statute or by any authority, but the argument or reason on which it rests, that only three bailiffs are necessary under the circumstances, has little force. The duties of bailiffs are not limited to mere attendance upon the sessions of the courts, since section 715 specifically declares that they are to attend upon the grand and other juries, and "for other necessary purposes." The attendance of the bailiffs upon the grand jury, which may be in session for a week or more at different times, or upon the petit jury when they retire to consider their verdict, necessitates their absence from the courtroom at the same time the court remains in session for the transaction of business. If the duties of bailiffs were limited to the maintenance of order in the court while in actual session, there might be some weight in the argument that only three bailiffs are necessary when both courts are held at the same time by one judge.

There is a confused notion underlying the government's position that the claim of six bailiffs to a single per diem each when both courts are held at the same time and place is the same as the claim of three bailiffs to double per diems when both courts are held at the same time and place. The two cases are, however, radically different. While Congress has carefully guarded against the receipt by the same officers of two per diems, it has not by any legislation denied the payment of a single per diem to such officers. The provision in section 715 that, "when both courts are in session at the same time," the bailiffs are only to be paid "for attendance on one court," like the provision in section 831 [U. S. Comp. St. 1901, p. 640], relates to double compensation to the same officers, and has no bearing on the question now under consideration.

The appropriation act of 1895 permits three bailiffs each for the Circuit and District Courts. When three bailiffs attend upon the two courts in obedience to the orders of adjournment and in conformity with their duty, their compensation of $2 a day should not depend upon the accident of the presence of one or two judges upon the adjourned day. Such a ruling is clearly unjust, and should only be upheld when the statute admits of no other construction.

The position in which the law respecting the payment of bailiffs would stand by the adoption of this ruling of the Comptroller may be illustrated as follows: On Monday, in Boston, the circuit judge holds a session of the Circuit Court, and the District Judge holds a session of the District Court, and each court is adjourned to meet on Tuesday morning at 10 o'clock. On Tuesday the six bailiffs, in obedience to the orders of adjournment, are in attendance upon the courts.

(1) It may happen that no judge is present on this day, and both courts are adjourned to the following day upon the written orders of the judges, under sections 583 and 672 of the Revised Statutes. In such a case the six bailiffs are entitled to their per diems. United States v. Pitman, 147 U. S. 669, 13 Sup. Ct. 425, 37 L. Ed. 324; United States v. McCabe (C. C.) 122 Fed. 653; 3 Comp. Dec. 522.

(2) It may happen that only the district judge is present on this day, and holds the District Court, and that the Circuit Court is adjourned upon the written order of the judge, under section 672 [U. S. Comp. St. 1901, p. 546]. In that case the six bailiffs are entitled to their per diems.

(3) It may happen that only the district judge is present on this day, and that he first opens the District Court for the transaction of business, then adjourns that court, and then opens the Circuit Court for the transaction of business, and adjourns it. In that case, there being a separate session of each court at different times, the six bailiffs are entitled to their per diems.

(4) Instead, however, of opening and adjourning each court separately, the district judge may open both courts at the same time, and proceed with the transaction of the business in both courts, and at the close of the day adjourn both courts until the following day. Under these circumstances, notwithstanding the six bailiffs are in attendance in obedience to the previous orders of adjournment, and notwithstanding their services may be required for attendance upon the grand jury, or for other necessary purposes, it is maintained that it is the duty of the marshal to inform three of the bailiffs that their services are not necessary, and that, under the law, he cannot pay them for attendance on this day.

A construction of the law which will lead to such results cannot be adopted in the absence of clear and unmistakable legislation by Congress.

The disbursements covered by this item were proper, and should have been allowed in the marshal's account.

The second item was a disallowance of $848 paid to bailiffs for attendance on court for the same days on which they also attended court as deputy marshals, and thereby earned a fee of $5 each for the marshal. The disallowance was on the ground that a deputy marshal who represents the marshal in court, and earns for him a per diem fee of $5, cannot at the same time be allowed payment for services as bailiff. 2 Comp. Dec. 438, 530.

In United States v. Saunders, it was held that a clerk in the office of the President of the United States, who was also the clerk of a committee of Congress, was entitled to receive the compensation al-

lowed by law for each office. The court declared that sections 1763, 1764, and 1765 of the Revised Statutes [U. S. Comp. St. 1901, pp. 1205, 1206, 1207] had no application to the case of two distinct offices, each with its own duties and compensation, and that both might be held by the same person at the same time. 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594. In Preston v. United States (D. C.) 37 Fed. 417, it was held that, under the rule laid down in United States v. Saunders, there was no incompatibility between the offices of crier and messenger of the courts, and that the same person might perform the duties and receive the compensation attached to both offices. In that case it was said the evidence showed that the two duties—messenger and crier—were not only compatible, but were distinct in their character, and that one duty was in no wise connected with or in continuation of the other. In Dill v. United States it was held that a marshal is entitled to fees for attendance by deputy at examination before a commissioner, though the deputy was paid as bailiff for attendance the same day upon the District Court and the Circuit Court. The decision in that case was put upon the single ground that similar claims had been uniformly allowed by the accounting officers of the government. 78 Fed. 618. Upon the same ground the Circuit Court of Appeals sustained the decision of the Circuit Court. United States v. Dill, 86 Fed. 79, 83, 29 C. C. A. 586. Upon the authority of the foregoing cases, it was held in Lovering v. United States that a marshal is entitled to charge for the attendance of a deputy before a United States commissioner, though the same person is paid the same day for attendance as bailiff before the District and Circuit Courts. 117 Fed. 565.

In my opinion, the offices of deputy marshal and bailiff are not so distinct, compatible, and disconnected as to bring them within the principle of United States v. Saunders, supra, and Preston v. United States, supra. The bailiffs perform the same duties as deputy marshals, although the latter are clothed by law with some additional powers. The main duties of bailiffs are to attend upon the sessions of the court and upon the juries, and the same duties fall upon the deputy marshals. The services performed by both classes of officers when the court is in session are practically identical. The convenience of the court and the orderly conduct of business requires that the same person shall not fill both offices at the same time. Nor should the same person be permitted to fill both offices on the same day, and thereby obtain additional compensation. There is nothing in the statutes which shows that Congress intended to sanction such a practice. On the contrary, it would seem to conflict with those provisions which forbid double or additional compensation to the same officer. Sections 715, 831, 1765 [U. S. Comp. St. 1901, pp. 579, 640, 1207]. For these reasons, the ruling of the Comptroller as to this item must be affirmed.

The third item was a disallowance of $4 for the payment of a per diem compensation for one bailiff on two successive Sundays during the first trial of the case of United States v. Bram. By order of court, four bailiffs were employed in charge of the jury on those days. This disallowance rests on the theory that under section 715, as mod-

ified by the sundry civil appropriation bill, only three bailiffs can be allowed for each court. This theory is clearly untenable. The restriction of three bailiffs to each court in the sundry civil appropriation bills only relates to the payment of bailiffs from the amounts appropriated for that purpose during the several years in which that restriction was inserted, and does not repeal the provision in section 715, Rev. St. [U. S. Comp. St. 1901, p. 579], which authorizes five bailiffs for each court. Puleston v. United States (D. C.) 88 Fed. 970, 977; United States v. Aldrich, 58 Fed. 688, 7 C. C. A. 431.

The fourth item was a disallowance of $36 for expenses of bailiffs in serving subpoenas upon witnesses in cases in which the United States was a party, between July 1, 1896, and June 30, 1897. With respect to this item, it appears that the witnesses were required in court, and that, all the deputy marshals being otherwise employed, the marshal requested and authorized the bailiffs to serve process. In Massachusetts any disinterested person may serve a subpoena. Rev. Laws Mass. c. 175, § 2. By Rev. St. § 715 [U. S. Comp. St. 1901, p. 579], the bailiffs are appointed to attend upon the juries "and for other necessary purposes." Upon the state of facts presented, I think this item fairly comes within the marshal's expenses for "contingencies that may accrue in holding the courts," mentioned in section 830, Rev. St. [U. S. Comp. St. 1901, p. 639]. This item should have been allowed.

The fifth item was a disallowance of $84.77 for payments made by the marshal for expenses actually incurred in civil cases out of the appropriations for marshal's fees and expenses. Subsequently the marshal collected this amount from the parties to the suits, and turned it over to the clerks of the courts, who thereupon paid it into the Treasury of the United States. The payments from the appropriation were disallowed on the ground that they were paid for expenses in civil cases out of the appropriation in question, when they should have been paid by the parties to the suits; and accordingly the marshal was called upon to pay the amount a second time into the Treasury of the United States, to the credit of the appropriation. It is not denied that the amount was paid by the marshal twice—once to the clerks of the federal courts, and once to the Treasurer of the United States. Under the circumstances, the marshal plainly has a right to recover this sum from the United States, and I do not understand that the government seriously contests this claim. The item is allowed.

The sixth item was a disallowance of $128.82 for meals of officers in charge of prisoners and witnesses in custody. The expense was incurred during the fiscal year ending June 30, 1898, chiefly for payments for meals of officers during the second trial of United States v. Bram. These expenditures were necessary and proper, and come within the provision of section 830, already cited, which authorizes the payment by the marshal of expenses for "other contingencies which may arise in holding the courts." Campbell v. United States, 65 Fed. 777, 13 C. C. A. 128; Donahower v. United States (C. C.) 77 Fed. 153, 160; United States v. Dill, 86 Fed. 79, 29 C. C. A. 586. This item is allowed.

The seventh item was a disallowance of $70 in the account for the quarter ending December 31, 1898. The amount was paid to Rogers & Jones, stenographers, as per diem compensation for services during the trial of United States v. Jewett. The authority to incur the expense for this service was contained in a letter from the Attorney General to the United States attorney. On the second of December, 1898, the United States attorney sent the following telegram, requesting authority:

"Boston, Dec. 2, 1898.

"Attorney General, Washington, D. C.: Trial of Jewett begins Monday. If verdict guilty case goes to Court of Appeals. Stenographic report of trial necessary. Authority requested to employ stenographer for ten dollars per diem if report not transcribed; if transcribed twenty-five cents folio of one hundred words, no per diem; if part transcribed proportion of per diem deducted. Boyd B. Jones, U. S. Attorney."

The replying authorization of the Attorney General reads as follows:

"Washington, D. C., Dec. 3, 1898.

"United States Attorney, Boston, Mass.: Employment stenographer case against Jewett authorized at ten dollars per diem or twenty-five cents per folio if testimony transcribed, charge per folio to include necessary carbon copies. John W. Griggs."

In accordance with this authority, a bill was rendered by the stenographers for nine per diems at $10 each, and payment was made by the marshal accordingly. Afterwards, upon request, for use in preparing the record for the Circuit Court of Appeals, the stenographers furnished the United States attorney with a transcript of the testimony for one whole day and two half days. The bill rendered for this latter service contained a credit of $20, the same being the per diem compensation for one whole day and for two half days. This bill was allowed, but the $70 paid the stenographers as a per diem compensation for work on days when the notes were not transcribed was disallowed. "The disallowance," in the words of the district attorney, "was based upon the theory that the authority of the Attorney General required the United States attorney to have and pay for transcribing the evidence of the entire trial in case he required the transcript of even an hour's testimony, or, in other words, the authority required the United States attorney to incur an expense of about $70 a day for nine days' transcribing, when such expense for two days and a per diem of $10 for seven days would answer the required purposes." Upon this state of facts, it is clear that this item should have been allowed.

A decree may be prepared in accordance with this opinion.