I-IowRY, J.,
delivered the opinion of the court:
This cause was heard and decided some years ago. Plaintiff thereupon filed a motion to amend the findings and for a new hearing generally. For some unexplained reason, although the motion was regularly docketed and called and Government counsel were always ready, the case was not brought to final hearing until the close of the last term. The questions presented by the motion are substantially the same originally argued and considered.
*187 The plaintiff was a commissioner of the Circuit Court of the United States for the Eastern District of New York from January 29, 1886, to January 20, 1892, and before and after. He was also chief supervisor of said district under the provisions of Title XXVI, Revised Statutes of the United States, entitled “ Elective franchise.” Between the dates mentioned, as commissioner, he presented accounts for services rendered the Government, which were duly audited and paid. The charges in those accounts, however, did not include the items covered in the present suit, and it is conceded that the accounts presented and paid contain the only charges which would have been allowed and paid at the time of their presentation.
Early in 1892 the plaintiff made up the account for $1,988.40, upon which the original petition in this case is based, covering specific services alleged to have been rendered for the six years preceding that time, and presented the same to the court for approval. After reciting that the account had been presented in the presence of the assistant district attorney, and that he had objected to none of the items, the court made the order shown in the findings.
Subsequent items were presented and approved in the same qualified language.
On the presentation of the various accounts payment was refused and' notice of the disallowances given. The amendment to the petition introduced February 16, 1893, swells the total amount claimed to $7,187.15, made up of an aggregation of fees not presented with the regular accounts of plaintiff, but which he claims to have omitted for the most part, understanding that they would not be paid.
The defendants particularly object to those of the fees set forth in the' bill of particulars growing out of alleged prosecutions finder chapter 7 of Title “ Crimes ” relating to elections. As to those fees they contend that the statute (sec. 1986) has taken from the commissioner all fees in detail and substituted therefor a gross charge of $10 in each case, from which it would result that no charge can be allowed for drawing and filing complaints, per diems, administering oaths, and other services in detail, because there were no cases before the commissioner.
*188 The findings explain in brief the allowances and disallow-ances, items 1, 2,11, 20, and 23 in finding m (with the exceptions noted) are hereinafter considered as relating to civil rights proceedings.
Item 3 of finding m is for writing out testimony in 177 cases, 3,370 folios, or an average of 19 folios to each of the cases.. The defendants submit that, in view of the refusal of the judge to make an unqualified approval of this item, claimant’s testimony is not sufficient to overcome the knowledge of the court that on the average 19 folios is much more than necessary for a commissioner to set down in substance the testimony upon any one hearing, who is by law restricted to four witnesses in the absence of a certificate by the district attorney that more were necessary, which certificate does not exist here. We can not say that the testimony is insufficient to disallow the whole item, nor that there was needless prolixity, as argued by the defense. We are without information, it is true, as to the particulars concerning these cases. The Government submits that 6 folios per case would be sufficient compensation. This would be an arbitrary rule to adopt, and in the face of the testimony of the plaintiff (which is all we have), alleging the necessity for the work and the number of folios, we allow the charge.
Item 4 is explained in the findings, and is allowed.
Item 5 is allowed on the showing that there were arrests and cases.
Item 6. Allowed as stated.
Item 7 is withdrawn.
Items 8, 9,10,12, 13,14,15,16,17, and 18 are allowed and sufficiently explained.
Item 19. Disallowed because when suspended for explanation none was given. The requirement of the Department for an explanation was reasonable, and until complied with the court will not take jurisdiction. (United States v. Fletcher, 147 U. S. R., 664.)
Item 20 is disallowed.
Item 21. Disallowed as unauthorized, certificates being a permissible charge only when a rule of court or a statute requires them.
*189 Item 22 is withdrawn by claimant.
Item 23 is disallowed
Item 24 is disallowed, as claimant has been paid for acknowledgments.
Item 11. Is disallowed in toto. The charge for certificates can-not be justified. The statute requires commissioners performing duties in Congressional elections to forward to the chief supervisor for the judicial district all complaints for preservation. (Sec. 2021, E. S.) The original complaints must be sent, not copies. It is the chief supervisor who must preserve and file the originals. The commissioner need not make copies for himself as commissioner. Another objection is that the transmission of these papers is imposed upon the commissioner by the same authority that puts upon him the power and duty to hear civil-rights cases, and the same statute limits his compensation in each case to $10, which would include this step in the proceedings of transmitting the papers to the chief supervisor.
The main question presented for determination is whether the plaintiff, as commissioner, is entitled to any fees in civil-rights proceedings when no arrests were made and no cases existed.
The liability of the defendants on this issue, which includes the right of the Government to counterclaim, depends upon the construction of the statutes relating to commissioners’ fees in such proceedings. .In the cases which have already been adjudicated, relating to fees of commissioners in such proceedings, the exact question involved in this case, according to the contention of the counsel for the plaintiff, has not been passed upon. On the other hand, the defendants contend that the question is res judicata by the decision of the Supreme Court in SouthworWs ease (151 U. S. R., 179, and 161 U. S. R., 639).
The chapter relating to elections was limited to crimes against the elective franchise and civil rights .of citizens. The provisions of the whole chapter were intended to protect the freedom and sanctity of the ballot in providing for the punishment of those preventing citizens from voting; of those intimidating voters; of those conspiring to injure *190 citizens in the exercise of civil rights; of those depriving citizens of such rights under color of local law; of those voting or registering fraudulently, and of those obstructing the execution of process. Larger powers were given to commissioners to enforce the statute, but it was never intended to permit the official most responsible for the proper enforcement of such a law to become the instrument of partisans in any election by issuing warrants on trival complaints or opening the doors to the careless and improvident use of ‘process for selfish or unlawful purposes. The Congress was dealing with a subject that, in providing for the use of preventive measures to further fair elections, used precautions to protect the citizen in his right to vote without molestation.
Without some defined limit to fees of commissioners, it is manifest that statutes intended to protect citizens in their civil rights were liable to be used to vex and oppress the electors while unjustly increasing the fees of such officials. It seems reasonable, therefore, to suppose that there was an intention to deprive commissioners of the incentive to multiply fees in the unlimited issue of warrants based on mere suspicion without the exercise of the greatest circumspection and care and yet have every reasonable complaint acted upon by granting larger compensation in actual cases.
The plaintiff contends that the courts have recognized two distinct classes of services of commissioners — the judicial, referred to in section 1986, and the clerical, referred to in the sections preceding the one last quoted — resting compensation for each upon a separate basis; that there have been positive allowances of fees for drawing complaints in ordinary oases/ that, referring to fees for complaints, the provision must be taken and construed liberally, oil the theory that the Government does not require the services of commissioners without compensation; that in view of the requirement of the New York Code of Criminal Procedure (directing that when a person is accused of crime the depositions of the informant and prosecutor and others must be taken), the commissioner can lawfully make the charges by virtue of section 1014 of the Revised Statutes (U. S.), because by that section the *191 laAv of the State must be observed to determine what is neces-saiy, and, inferentially, what services can be charged for; that under the acts of Congress the arrested party must be brought for hearing before the nearest commissioner for' trial, in which event the officer issuing the warrant would sometimes be deprived of any compensation whatever, and, finally, that the fee bill (sec. 847, R. S.) recognizes a distinction between services in a “ case ” and those of a preliminary character in all investigations and prosecutions of.persons charged with crime against the laws of the United States.
Four sections of the Revised Statutes bear directly upon the question. Section 1982 authorizes and requires district attorneys, marshals and deputy marshals, commissioners, and officers especially .empowered, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of the chapter relating to elections. Section 1983 directs the circuit and district courts of the United States to increase the number of commissioners' so as to afford a speedy and convenient means for the arrest and examination of persons charged with the crime referred to in the preceding section, with authority invested in said commissioners, and the requirement as well, to exercise all the powers and duties conferred on them with regard to such offenses in like manner as they are authorized by law to exercise with regard to other offenses against the United States. ‘ Section 1984'empowers commissioners within their respective counties to appoint from time to time one or more suitable persons to execute all such warrants or other process as the commissioners might issue in the lawful performance of the duties, such warrants to run and be executed anywhere in the State or Territory within which they are issued. Section 1986 is as follows:
“ The district attorneys, marshals, their deputies, and the clerks of the courts of the United States and Territorial courts shall be paid for their services in cases under the foregoing provisions the same fees as are allowed to them for like services in other cases; and where the proceedings are before a commissioner, he shall be entitled to a fee of $10 for his services in each case, inclusive of all services incident to the arrest and examination.”
*192 The first clause of the last section in terms restricts compensation of services rendered by district attorneys, marshals, their deputies, and the clerks of the courts to “ cases.5' ’ But plaintiff claims that as to commissioners the last clause of the section leaves them free to claim for clerical and ministerial services in all preliminary proceedings not resulting in cases, the fee of $10, which the statute declares them entitled to for services in each case, being for the performance of judicial duties. That clerical services in proceedings independent of cases must be compensated for as “ extra judicial ” labor, under the New York Code of Criminal Procedure, as stated.
It is not meant to imply that a commissioner could at any time refuse to entertain complaints under any statute imposing the duty of issuing a warrant where reasonable ground existed to believe that a crime had been committed and that the person complained of had committed it. But where a commissioner is called upon to draw a complaint, administer an oath, and issue a warrant with the means at hand to verify the truth of-the charge without making a case against the person complained of, it was clearly the duty of the officer to resort to these means to satisfy himself of the probabilities of the commission of the alleged offense.
The findings show that plaintiff was the chief supervisor under the chapter relating to the elective franchise at the time. Lists were in his hands or at his command containing the names of all persons entitled to' vote. Where names upon these lists whose right to register or vote was honestly doubted it was the duty of the chief supervisor to verify the lists by proper inquiry and examination at the respective-places assigned by the persons on the lists as their residences. (Sec. 2026, Rev. Stat.) Many of the complaints are stated by the commissioner — how many he does not specify — to have been found to be errors of ignorance or unintentional misrepresentation or the like on the part of those charging the commission of offenses, and in such cases- warrants were withheld. Some warrants issued under the circumstances, set forth were not charged for, but. others are charged for. *193 No compensation can be claimed for this commissioner where an inspection of the lists and an inquiry at a residence would develop the probable truth of the matter favorably to those charged. For the service of examining poll books and making inquiries at residences, plaintiff was compensated in his capacity as chief supervisor. In not placing the warrants in the hands of the marshal at once to execute, plaintiff must also have had his doubts as to the propriety of doing so. , While the law of the State in which the .services are rendered can be looked to in ordinary cases to determine what are necessary, the law of no State would justify compensation for preliminary proceedings not resulting in cases under the statute which provided for compensation only in cases.
Nor does the law of any State for any kind of a proceeding not resulting in a case sanction over an act of Congress the practice of charging per diems before the issuance of warrants as shown by the seventh item of the present suit, (United States v. Patterson, 150 U. S. R., 69.) Under this authority this charge for hearing and deciding on criminal complaints to determine the issuance of warrants was abandoned at the hearing, but in connection with the other*proof in the case it is clear that plaintiff made up in his account for 1886 per diems of $5 in “ proceedings ” but not in cases, •and secured payment. The account for the year mentioned discloses items paid of $7.05 in such instances, of which $2.05 was evidently for the jurat, the filing of the complaint, entering and .docketing the same, and issuing the warrant, and the other part of the charge for determining whether to take the complaint or not. These improper payments, few in number, are included in the counterclaim hereafter to he noted.
But it is urged that to deny compensation for clerical work without cases is a repeal of the general fee bill (fixing commissioners’ compensation) by implication, which the law does not favor.
While repeals by implication are not favored, that principle can not be invoked against a statute defining for the *194 first time a new class of offenses and fixing the standard of official fees at the same time.
The drawing of a complaint, administering an oath, and issuing a warrant are the incidents of a case. Without “ cases ” under the election laws these incidents for purposes of compensation to officers could not arise. The entire legislation on the subject was tentative. The authority for this is the statement of Mr. Justice Brown in Sherman v. United States (155 U. S., 682), where it is said: “ It is evident that no permanent system for the carrying on of Congressional elections was intended to be established.” But it is said Congress intended to increase the per diem allowed in other kinds of cases on the assumption that 'it would take-an average of two days for hearing and deciding a single election case. Besides denying to all other officers charged with the duty of instituting prosecutions any fees unless there were cases (including the special officers provided for-ín section 1987), there is greater reason to believe that commissioners were not favored in the matter of fees to the disadvantage of their coadjutors in the work, for the reason that Congress did not intend to compensate for any service not connected with an actual prosecution under an experimental law. Whatever may be conjectured as to the time it would take to hear a case, the fact remains that many cases of any character can be sometimes heard in one day; and in election cases commissioners could do what they could not in other cases — charge double the per diem allowed in other cases for as many cases as could be heard in one day.
If the rule would now and then work injustice — as in cases where one commissioner issued the warrant and another heard the case on the return of the warrant by the officer executing it at some point in the State distant from the officer taking the complaint, and but one fee could be paid — the nonreturn of warrants before other commissioners prevented any loss of fees to the one issuing the warrant, until the passage of the act (preceding the final repeal of the whole chapter) conferring jurisdiction upon the nearest judicial officer before whom prisoners were required to be taken as arrests were made. (Act of March 3, 1893, 27 Stat. L.,. 609.)
*195 The amendment to the law in the particular mentioned came so late and in correction presumably of inconvenience and wrong to the citizen in being subjected to answer complaints at points remote from the residence of such citizen, the action of Congress in this amendment must be read without reference to its effect upon commissioners’ claim for fees in cases of distant arrests.
But discussion is beside the question if the matter has been settled for us, as earnestly contended by the Government.
South-worth presented a claim (151 U. S. R., 179; 161 U. S. R., 639) alleging that as commissioner he made a docket entry of all the proceedings in each case, including inter alia the drawing of the affidavit, the issuing of the warrant, the return of the officer, the arrest and examination of the person charged in each case where an arrest was made, the number of oaths administered and affidavits filed, etc. As to 77 cases in which the persons arrested were held for trial his account was paid, but refused as to other cases. An amended allegation was introduced to show in a general way the facts and circumstances arising by the laws of Louisiana, from which the petitioner claimed he was justified in believing probable cause existed that offenses had been committed.
The court held: (1) That when a defendant was arrested and an examination held there was a criminal case entitling the commissioner to a fee, although the examination resulted in a discharge; (2) that when no arrest was made and no examination took place, no case had arisen within the meaning of Revised Statutes, section 1986, entitling the commissioner to the fee provided by law.
Because no charges were made for drawing complaints and issuing warrants, and no items stated which could form the basis of an account upon which the accounting officers or the court could pass, the plaintiff thinks the court could not on the record, and in fact did not, pass upon the legality or propriety of payment for “ instituting ” the prosecutions by taking the complaints. While the court did say, on the appeal of the plaintiff from the judgment of this court sustaining the demurrer of the Government to the whole petition, that it would consider the petition as though it alleged but one case before the commissioner, one complaint filed, *196 one warrant issued, and one party arrested, and that the facts attending the prosecutions should be fully presented in order that the bona fides of the transaction might be determined, it also said if the commissioner had proceeded in good faith to render services, acting upon a complaint manifestly intended to charge an offense, and, the defendant having been arrested ■upon svch complaint, an examination was had, compensation would follow. As to 1,303 cases, in which there was an arrest, examination, and discharge of the defendant, a cause of action was stated and the cause remanded as to them.
We think the language used by the court, its reference to the statute ■ applying fees .to a “ case ” only, and the action directed to be taken to investigate charges only where there was an arrest, excluded consideration of all charges not in cases, the clerical as well as the judicial service.
Nothing in the Southworth case shows that he waived the lesser fees included in the greater claim except the mere fact that he thought he was entitled to $10 in what he called each case. His petition was framed on the theoiy that he was entitled to that or nothing, and, as we think, was finally decided on that theory.
The Treasury Department acted upon this construction and the Department of Justice governed the action of its officers in dealing with other accounts as did the accounting officers of the Treasury. The plaintiff, however, had brought his suit before the Supreme Court had considered the question at all, and there was nothing left for him to do but still argue for constructive fees. There was something possibly to gain if he stood on his petition and much to lose if he did not.
Without impugning the good faith of the plaintiff on the record as presented, we think .the warrants issued but withheld, whether any such are embraced in the counterclaim or covered in the j>resent demand, were unnecessary. If the services in getting up these warrants were performed for the convenience of the officer, or were manifestly unnecessary or useless — even if they be such as he judges proper for him *197 self — they can not be made the basis of a claim against the Government. (Dennison v. United States, 168 U. S. R., 241.)
As to the warrants issued but not served, we will not establish a different rule for the Treasury than that accepted there for'several years on the authority of the South-worth case, but will adhere to the letter and spirit of section 1986 as the safe rule applicable to the claim.
It is the only safe rule, too, if the amount allowed, in the language of the Southworth decision, “ precludes the idea that the mere filing of a complaint and issue of a warrant is sufficient ” to. make cases from which alone fees can arise.
These views sustain the set-off of the Government to the extent of fees paid to the plaintiff on other accounts containing charges similar to those rejected here unless the counterclaim be denied application for reasons other than those considered and stated. The Treasury statement is not denied by the testimony pf the plaintiff that‘charges and collections were made in some 1,400 or 1,500 instances where there were no cases. Plaintiff admits that presumably the Treasury statement is correct and establishes the findings of fact on the amount of the set-off.
It being made to appear that under a custom of the Treasury Department existing during the time covered by plaintiff’s services and other accounts the provisions of section 1986 were ignored and commissioners allowed detail fees in civil-rights cases as in others, and that plaintiff’s former accounts for services where there were no arrests of persons accused of offenses under said chapter relating to the elective franchise had been allowed and paid, the defendants now demand that these improper allowances in the accounts of the plaintiff heretofore presented shall- be deducted from the proper allowances of the present account. According to. the certificate of the accounting officers in evidence, plaintiff was allowed and paid for services preliminary to the arrest of persons accused of offenses in civil-rights proceedings and where there were no cases sums aggregating $3,120.
But it is argued on behalf of the plaintiff that the court having “ passed upon ” the charges counterclaimed, its judgment approving the accounts’and followed by their payment *198 is conclusive, and can not be collaterally questioned through the counterclaim; the amounts counterclaimed can not, in any event, be deducted from the sum due the claimant upon his petition, because an offset bj^ the Government may be sustained only where there exists a running account between the parties or where the claimant reopens a settled account by suing for a balance disallowed upon such settlement, and where no peculiar circumstances appear to make recovery inequitable and the questions involved in the counterclaim have not been already judicially determined.
The multitude of authorities presented in support of these propositions need not be considered. We think the claimant has brought himself distinctly within the rule laid down by the Supreme Court in a matter recently adjudicated, where it is said that while it is not seemly for the accounting officers to rescind an allowance which has been made to an officer and pursue him to recover back the money paid thereon, yet when he comes into court and seeks to open up the same account it is not only proper, but their duty, to demand that any improper allowances should be deducted from any improper disallowances which may now be made good to him. 164 U. S. R., 190.)
The mistaken custom in the Treasury Department under which the plaintiff in this case received fees to which he was not entitled does not justify him in falling behind the mistakes of others on an unlawful demand of his own when he seeks to recover other amounts bjr suit against the Government which include unlawful charges of a character similar to those heretofore paid. The plaintiff now concedes the incorrectness of the methods of the accounting officers and seeks by one of his items to have reviewed all of the cases in which his detail fees amounted to less than $10 and to apply section 1986 now. He is entitled to enough to make up these fees to $10 in each “ case,” and this part of the demand proves the incorrectness of the charge in those items for ' specific fees where warrants were not served.
If the action of Department executive officers in matters of account and payment can not be regarded as a conclusive determination of the rights of the parties when brought in *199 •question in a court of justice; if, on grounds of public policy, the Government can not be bound by the 'action of its officers in making unauthorized payments, and if the person receiving money unlawfully paid can not retain the fruits of actions not authorized by law resulting from erroneous conclusions of Government agents as to the legal effect of the statutes under or in reference to which money has been paid, then we see no reason why the counterclaim in this case may not be maintained. The plaintiff denies that bjr his petition in the present suit he is attempting to reopen any of his former accounts, but the fact remains that items of the account in suit present for correction his former account.
If' an executive officer like the Postmaster-General can •cause suit to be brought where money has -been illegally paid by reason' of misconstruction or misapprehension of the law in reconsideration of prior decisions, and if,.in his judgment, money has been paid without authority of law, and he has money of the same claimant in his hands, and may hold it subject to the decision of the court when the claimant sues, we can find nothing in this case to prevent the Government from asserting the principle that a party receiving money illegally paid by a public officer is liable eco aequo et iono to refund. (Milchrist v. United States, 31 C. Cls. R., 403; Yoes v. United States, 30 C. Cls. R., 370; Wisconsin Central R. R. v. United States, 164 U S. R., 190; McElrath v. United States, 102 U. S. R., 426.)
For the reason stated, we sustain the defendant’s plea of set-off to the extent of the fees improperly and unlawfully paid to the plaintiff in the settlement of his former accounts. The amount of the counterclaim being $8,120, this sum, due to the United States, is ordered set off against so much of the demand of the plaintiff as is established by the findings to be due to him by the present account. The sum found due and payable by the account is $4,937.45, leaving a balance in plaintiff’s favor (after deducting the amount of the set-off) of one thousand eight hundred and seventeen dollars and forty-five cents ($1,817.45), for which judgment will be entered.